IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                            :
                                                    :
                    Plaintiff,                      :
                                                    : Civil No.:
          v.                                        : 1:12-cv-01247-MAD-TWD
                                                    :
The Gillette Company, KeySpan Gas East Corporation (d/b/a :
National Grid), Energizer Battery Manufacturing, Inc., Union :
Carbide Corporation, Spectrum Brands, Inc., Brambles :
Environmental, Inc., Clean Harbors Environmental Services, Inc., :
Qwest Communications International, Inc., Verizon New York, :
Inc., 26 Railroad Avenue, Inc., A. P. Pharma, Inc., Ajinomoto :
North America, Inc., Allegheny Ludlum, LLC, Amresco LLC, :
Arizona Chemical Company, LLC, Atmos Energy Corporation, :
Battery Broker Environmental Services, Inc., Buffalo Optical :
Company, Cameron International Corporation, Chemtron :
Corporation, City of Lakeland Florida, City of North Tonawanda, :
City of Richmond, Dukane Corporation, FirstEnergy Corporation, :
Glit Division of CCP, LLC, Harding Metals, Inc., Honeywell :
International, Inc., Johnson Controls, Inc., Los Angeles Unified :
School District, MDI, Inc., Memphis Light, Gas & Water Division, :
 Metalor Technologies USA Corporation, Orange Water and Sewer :
Authority, Orlando Utilities Commission, Osram Sylvania, Inc., :
Partlow West Corporation, Pioneer Natural Resources USA, Inc., :
Potomac Electric Power Company, East Side Jersey Dairy, Inc. :
(a/k/a Prairie Farms Dairy Anderson), Rutland Regional Medical :
Center, Scana Corporation, Southern Union Company. Space :
Systems/ Loral, Inc., Taylor School District, The M&P Lab, Inc., :
The Scripps Research Institute, TRW Automotive U.S., LLC, :
 Union College, University Hospitals of Cleveland, Virginia :
Natural Gas,York International Corporation,           :
                                                    :
                    Defendants.                     :
                                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**NOTICE OF LODGING OF PROPOSED CONSENT DECREE**

The United States is lodging with this Court, pending public comment, a proposed

Consent Decree attached hereto between the United States, on behalf of the United States

Environmental Protection Agency, and the above listed Defendants.  The proposed Remedial

Action Consent Decree would resolve the United States' claims under the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"),

42 U.S.C. § 9601 et seq., with 71 parties, including 19 federal agencies and 42 small contributor

parties, relating the Mercury Refining, Inc., Superfund Site, located in the towns of Colonie and

Guilderland, in Albany County, New York.  The Consent Decree also resolves threatened claims

for contribution from federal agencies with alleged liability.

In accordance with Paragraph 118 of the Consent Decree, the United States requests that

the Court not approve and enter the proposed Consent Decree at this time. Rather notice of the

lodging of the Consent Decree will be published in the Federal Register, following which the

United States Department of Justice will receive public comments on the proposed Consent

Decree.  At the conclusion of the comment period, the United States will file with the Court any

comments received, as well as responses to the comments, and at that time, if appropriate, file a

Motion to Enter the Consent Decree.

Respectfully submitted,

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division


*/s/ Laura J. Rowley*
Laura J. Rowley
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C.  20044-7611
 (202) 616-8763

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

Thomas Spina
Assistant United States Attorney
100 South Clinton Street, Room 900
Syracuse, NY 13261

OF COUNSEL:

Sharon Kivowitz
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, NY 10007
(212) 637-3183

Certificate of Service

   I, Laura J. Rowley, certify that the foregoing Notice of Lodging, and attached Consent Decree with Appendices, will be served on each of the Defendants, as listed below, by US Mail, at the address below.  Service will be made no later than August 7, 2012.

/s/ <em>Laura J. Rowley</em><br>Laura J. Rowley

| | |
|---|---|
| *The Gillette Company*<br>Daniel H. Squire<br>Wilmer Hale<br>1875 Pennsylvania Ave. NW<br>Washington, DC  20006 | *KeySpan Gas East Corporation*<br>*d/b/a National Grid*<br>Francis Murphy, Senior Counsel<br>National Grid<br>175 E. Old Country Road<br>Hicksville, NY  11801 |
| *Energizer Battery Manufacturing, Inc.*<br>David P. Rosenblatt<br>Burns & Levinson<br>125 Summer Street<br>Boston, MA  02110 | *Union Carbide Corporation*<br>Thomas Gieck<br>2754 Compass Dr., Suite 280<br>Grand Junction, CO  81506 |

| | |
|---|---|
| *Spectrum Brands, Inc.*<br>Andrew Perellis<br>Seyfarth Shaw LLP<br>131 S. Dearborn<br>Chicago, IL  60603 | *Brambles Environmental, Inc.*<br>William L. Pence<br>Baker & Hostetler LLP<br>2300 Suntrust Center<br>200 South Orange Avenue<br>Orlando, FL  32801-3432 |
| *Clean Harbors Environmental Services, Inc.*<br>Michael R. McDonald<br>Asst. General Counsel & Asst. Secretary<br>142 Longwater Drive<br>Norwell, MA  02061 | *Qwest Communications International, Inc.*<br>Chris Sutton<br>Perkins Coie LLP<br>1900 Sixteenth Street, Suite 1400<br>Denver, CO  80202-5255 |
| *Verizon New York, Inc.*<br>Laura Karvosky<br>Paul Hastings<br>75 E. 55th Street<br>New York, NY  10022 | *26 Railroad Avenue, Inc.*<br>Kevin Young<br>Young Sommer LLC<br>5 Palisades Drive<br>Albany, NY  12205 |
| *A.P. Pharma, Inc.*<br>Ryan A. Murr<br>Ropes & Gray LLP<br>Three Embarcadero Center<br>San Francisco, CA  94111-40006 | *Ajinomoto North America, Inc.*<br>Bradley Bigger<br>400 Kelby Street<br>Fort Lee, NJ  07024 |
| *Allegheny Ludlum, LLC*<br>Lauren McAndrews<br>1000 Six PPG Place<br>Pittsburgh, PA  15222-5479 | *Amresco, LLC*<br>Michael J. Mascali<br>6681 Cochran Road<br>Solon, OH 44139-3903 |
| *Arizona Chemical Company, LLC*<br>Pamela Simmons<br>4600 Touchton Road East, Suite 1200<br>Jacksonville, FL  32246 | *Atmos Energy Corporation*<br>Douglas C. Walther, Deputy General Counsel<br>P.O. Box 650205<br>Dallas, TX 75265-0205 |
| *Battery Broker Environmental Services, Inc.*<br>Leanne Reid<br>11 Tupper Avenue<br>Etobicoke, ON  M8Z5H5<br>Canada | *Buffalo Optical Co.*<br>Joseph Gugliuzza<br>280 Delaware Ave.<br>Buffalo, NY 14202-1801 |
| *Cameron International Corp.*<br>Bruce Himmelreich<br>16250 Port Northwest<br>Houston, TX  77041 | *Chemtron Corp.*<br>Richard Timm, Jr.<br>35850 Schneider Court<br>Avon, OH  44011 |

| | |
|---|---|
| *City of Lakeland*<br>Timothy J. McCausland<br>228 S. Massachusetts Ave.<br>Lakeland, FL  33801 | *City of North Tonawanda*<br>Shawn P. Nickerson, City Attorney<br>City Hall<br>216 Payne Ave.<br>North Tonawanda, NY  14120 |
| *City of Richmond*<br>Allen L. Jackson, City Attorney<br>City Hall<br>900 East Broad Street, Suite 300<br>Richmond, VA  23219 | *Dukane Corp.*<br>Michael Ritschdorff<br>2900 Dukane Drive<br>St. Charles, IL  60174-3348 |
| *East Side Jersey Dairy, Inc.*<br>*(a/k/a Prairie Farms Dairy Anderson)*<br>Thomas Weber, Asst. Secretary<br>1100 Broadway<br>Carlinville, IL  62626 | *FirstEnergy Corp.*<br>Douglas Weber<br>76 S. Main Street<br>Akron, OH  44308 |
| *Glit, Division of CCP, LLC*<br>Anne Viner<br>Much Shelist Denenberg Ament & Rubenstein, PC<br>191 North Wacker Drive, Suite 1800<br>Chicago, IL  60606 | *Harding Metals, Inc.*<br>Jillian Colby<br>Kalil & LaCount<br>681 Wallis Road<br>Rye, NH  03870 |
| *Honeywell International, Inc.*<br>Kerry Dziubek<br>Arnold & Porter LLP<br>399 Park Avenue<br>New York, NY  10022-4690 | *Johnson Controls, Inc.*<br>Benjamin Grawe<br>Gonzalez Saggio & Harlan LLP<br>8383 Greenway Blvd.; Suite 600<br>Middleton, WI  53562 |
| *Los Angeles Unified School District*<br>Jefferson Crain<br>Board Secretariat<br>333 S. Beaudry Avenue, 24th Floor<br>Los Angeles, CA  90017 | *MDI, Inc.*<br>Mike Brewers<br>25028 US Route 12 East<br>P.O. Box 710<br>Edwardsburg, MI  49112 |
| *Memphis Light, Gas & Water Division*<br>Charlotte Knight Griffin<br>Manager of Legal Services<br>220 South Main Street<br>Memphis, TN  38101 | *Metalor Technologies USA Corp.*<br>Diane George<br>255 John L. Dietsch Blvd.<br>North Attleboro, MA  02761 |

| | |
|---|---|
| *Orange Water and Sewer Authority*<br>Robert Epting<br>Epting & Hackney<br>410 Martin Luther King Jr. Blvd.<br>Chapel Hill, NC  27514 | *Orlando Utilities Commission*<br>Wayne Morris, Chief Deputy General Counsel<br>100 West Anderson Street<br>P.O. Box 3193<br>Orlando, FL  32802 |
| *Osram Sylvania, Inc.*<br>Kai P. Moy<br>100 Endicott Street<br>Danvers, MA  01923 | *Partlow West Corporation*<br>c/o Videojet Technologies<br>Carl Grabinski<br>1500 Mittel Blvd.<br>Wood Dale, IL  60191 |
| *Pioneer Natural Resources USA, Inc.*<br>Jefferson Rees<br>5205 N. O'Connor Blvd, Suite 200<br>Irving, TX  75039-3746 | *Potomac Electric Power Company*<br>Joanne Scanlon Prestia, Special Counsel<br>P.O. Box 6066<br>Newark, DE  19714-6066 |
| *Rutland Regional Medical Center*<br>Thomas Dowling<br>Ryan Smith & Carbine, LTD<br>98 Merchants Row<br>P.O. Box 310<br>Rutland, VT  05701 | *Scana Corp.*<br>Corporation Service Company<br>Registered Agent<br>1703 Laurel Street<br>Columbia, SC  29201 |
| *Southern Union Company*<br>Louis Soldano, Counsel<br>5051 Westheimer Road<br>Houston, TX  77056 | *Space Systems/Loral, Inc.*<br>Davina Pujari<br>Barg Coffin Lewis & Trapp, LLP<br>350 California Street, 22nd Floor<br>San Francisco, CA  94104-1435 |
| *Taylor School District*<br>Bethany Iverson<br>Superintendent<br>23033 Northline Rd.<br>Taylor, MI 48180 | *The M&P Lab, Inc.*<br>Michael Peters<br>Stockli Slevin & Peters, LLP<br>90 State Street<br>Albany, NY  12207 |
| *The Scripps Research Institute*<br>Thomas Northrup, Ph.D., J.D.<br>Chief Business Counsel<br>10550 North Torrey Pines Road<br>Mail Code TPC-8<br>La Jolla, CA  92037 | *TRW Automotive U.S., LLC*<br>Scott Blackhurst, Senior Counsel<br>12001 Tech Center Drive<br>Livonia, MI  48150 |

| | |
|---|---|
| *Union College*<br>John Skumurski<br>Union College<br>807 Union Street – Feigenbaum Hall<br>Schenectady, NY  12308 | *University Hospitals of Cleveland*<br>Marian Homer<br>Claims & Litigation Services<br>3605 Warrensville Center Road, MSC  9115<br>Shaker Heights, OH  44122-5203 |
| *Virginia Natural Gas*<br>Edward A. Kazmarek<br>Kazmarek Geiger & Laseter, LLP<br>3490 Piedmont Road NE, Suite 350<br>Atlanta, GA  30305 | *York International Corp.*<br>Benjamin Grawe<br>Gonzalez Saggio & Harlan LLP<br>8383 Greenway Blvd.; Suite 600<br>Middleton, WI  53562 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :
                                            :
              Plaintiff,                     :
                                            : Civil No.:
       v.                                   : 1:12-cv-01247-MAD-TWD
                                            :
The Gillette Company, KeySpan Gas East Corporation (d/b/a    :
National Grid), Energizer Battery Manufacturing, Inc., Union  :
Carbide Corporation, Spectrum Brands, Inc., Brambles         :
Environmental, Inc., Clean Harbors Environmental Services, Inc.,  :
Qwest Communications International, Inc., Verizon New York,   :
Inc., 26 Railroad Avenue, Inc., A. P. Pharma, Inc., Ajinomoto  :
North America, Inc., Allegheny Ludlum, LLC, Amresco LLC,     :
Arizona Chemical Company, LLC, Atmos Energy Corporation,    :
Battery Broker Environmental Services, Inc., Buffalo Optical   :
Company, Cameron International Corporation, Chemtron          :
Corporation, City of Lakeland Florida, City of North Tonawanda,  :
City of Richmond, Dukane Corporation, FirstEnergy Corporation,  :
Glit Division of CCP, LLC, Harding Metals, Inc., Honeywell    :
International, Inc., Johnson Controls, Inc., Los Angeles Unified  :
School District, MDI, Inc., Memphis Light, Gas & Water Division, :
 Metalor Technologies USA Corporation, Orange Water and Sewer :
Authority, Orlando Utilities Commission, Osram Sylvania, Inc.,  :
Partlow West Corporation, Pioneer Natural Resources USA, Inc.,  :
Potomac Electric Power Company, East Side Jersey Dairy, Inc.   :
(a/k/a Prairie Farms Dairy Anderson), Rutland Regional Medical  :
Center, Scana Corporation, Southern Union Company. Space      :
Systems/ Loral, Inc., Taylor School District, The M&P Lab, Inc.,  :
The Scripps Research Institute, TRW Automotive U.S., LLC,     :
 Union College, University Hospitals of Cleveland, Virginia    :
Natural Gas,York International Corporation,                  :
                                            :
              Defendants.                    :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**<u>CONSENT DECREE FOR REMEDIAL ACTION AND RECOVERY OF RESPONSE
COSTS</u>**

## TABLE OF CONTENTS

I.      BACKGROUND ...................................................................................................1
II.     JURISDICTION...................................................................................................2
III.    PARTIES BOUND ...............................................................................................3
IV.     DEFINITIONS.....................................................................................................3
V.      GENERAL PROVISIONS ...................................................................................7
VI.     PERFORMANCE OF THE WORK BY APPENDIX A-1 AND OWNER SETTLING
        DEFENDANTS ....................................................................................................9
VII.    REMEDY REVIEW ...........................................................................................13
VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ........................14
IX.     ACCESS AND INSTITUTIONAL CONTROLS ...................................................15
X.      REPORTING REQUIREMENTS .......................................................................19
XI.     EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES..........20
XII.    PROJECT COORDINATORS ............................................................................21
XIII.   PERFORMANCE GUARANTEE........................................................................22
XIV.    CERTIFICATION OF COMPLETION.................................................................26
XV.     EMERGENCY RESPONSE ................................................................................28
XVI.    PAYMENTS FOR RESPONSE COSTS ...............................................................29
XVII.   INDEMNIFICATION AND INSURANCE.............................................................33
XVIII.  FORCE MAJEURE............................................................................................34
XIX.    DISPUTE RESOLUTION...................................................................................35
XX.     STIPULATED PENALTIES................................................................................38
XXI.    COVENANTS BY PLAINTIFF ...........................................................................42
XXII.   COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL
        AGENCIES........................................................................................................46
XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION ..................................................48
XXIV.   ACCESS TO INFORMATION ............................................................................49
XXV.    RETENTION OF RECORDS ..............................................................................50
XXVI.   NOTICES AND SUBMISSIONS..........................................................................51
XXVII.  RETENTION OF JURISDICTION .......................................................................52
XXVIII. APPENDICES ...................................................................................................53
XXIX.   COMMUNITY RELATIONS ..............................................................................53
XXX.    MODIFICATION ..............................................................................................53
XXXI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ..............................54
XXXII.  SIGNATORIES/SERVICE .................................................................................54
XXXIII. FINAL JUDGMENT...........................................................................................54

I.      BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.§§ 9606, 9607.

B.      The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Mercury Refining Superfund Site (the "Site") in the Towns of Guilderland and Colonie, Albany County, New York, together with accrued interest; and (2) performance of response actions by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of New York (the "State") on June 14, 2011, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Fish and Wildlife Service and the National Oceanic and Atmospheric Administration on February 26, 2009 of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

E.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.  Settling Federal Agencies do not admit any liability arising out of the transactions or occurrences alleged in any counterclaim that could have been asserted by Settling Defendants.

F.      The Settling Defendants identified in Appendix A-1 hereto (hereinafter "Appendix A-1 Settling Defendants"), and Settling Defendants identified in Appendix A-2 hereto (hereinafter "Appendix A-2 Settling Defendants") have reached a separate agreement under which Appendix A-2 Settling Defendants will pay $1,300,000 into an escrow account to be established pursuant to this Consent Decree.  Such payment is for performance of the Work required by this Consent Decree and the completion of the Remedial Design pursuant to the RD SAO and the RD UAO as defined in Paragraph 4 below, and includes a premium to cover cost overruns.

G.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 1, 1983, 48 Fed. Reg. 40658.

H.      In response to a release or a substantial threat of a release of hazardous substances at or from the Site, EPA assumed lead agency status from the New York State Department of Environmental Conservation ("NYSDEC") in early 2000 and in 2001 EPA commenced a

1

Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

I.      EPA completed a Remedial Investigation /Feasibility Study ("RI/FS") Report on March 30, 2008.

J.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for cleanup of the Site on March 30, 2008, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Emergency and Remedial Response Division ("ERRD") Director, EPA Region 2, based the selection of the response action.

K.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 30, 2008, on which the State had a reasonable opportunity to review and comment and on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. §9617(b).

L.      Appendix A-1 Settling Defendants and Appendix A-2 Settling Defendants are performing the Remedial Design ("RD") of the remedy selected in the ROD pursuant to the RD SAO and the RD UAO as defined in Paragraph 4, below.

M.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by Appendix A-1 Settling Defendants and Owner Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

N.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C.§ 9613(j), the remedy set forth in the ROD and the Work to be performed by Appendix A-1 Settling Defendants and Owner Settling Defendant shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

O.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.      JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.§§ 1331 and 1345, and 42 U.S.C.§§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not

challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their heirs, successors, and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.     Appendix A-1 Settling Defendants and Owner Settling Defendant shall provide a copy of this Consent Decree to each of their respective contractors hired to perform the Work required by this Consent Decree and to each person representing any Appendix A-1 Settling Defendant and/or Owner Settling Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Appendix A-1 Settling Defendants and Owner Settling Defendant or their respective contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Appendix A-1 Settling Defendants and Owner Settling Defendant shall nonetheless be responsible for ensuring that their respective contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor hired by Appendix A-1 Settling Defendants and/or Owner Settling Defendant shall be deemed to be in a contractual relationship with Appendix A-1 Settling Defendants and/or Owner Settling Defendant, respectively, within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C.§ 9607(b)(3).

## IV.   DEFINITIONS

4.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

"Administrative Order for Remedial Design" or "RD UAO" shall mean the October 22, 2009 Administrative Order for Remedial Design, Index No. 02-2010-2001, issued by EPA to Appendix A Settling Defendants Clean Harbors Environmental Services, Inc. and Qwest Communications International, Inc.

"Administrative Settlement Agreement and Order for Remedial Design and Cost Recovery" or "RD SAO" shall mean the September 30, 2009 Administrative Settlement Agreement and Order for Remedial Design and Cost Recovery, Index No. 02-2009-2020, between EPA and Appendix A Settling Defendants Brambles Environmental, Inc., Eveready Battery Company, Inc., KeySpan Gas East Coproration (d/b/a National Grid), Spectrum Brands, Inc., The Gillette Company, Union Carbide Corporation and Verizon New York, Inc.

 "Appendix A Settling Defendants" shall mean all those parties listed in Appendix A attached hereto.

"Appendix A-1 Settling Defendants" shall mean all those parties listed in Appendix A-1 attached hereto.

"Appendix A-2 Settling Defendants" shall mean all those parties listed in Appendix A-2 attached hereto.

"Appendix B Settling Defendants" shall mean all those parties listed in Appendix B attached hereto.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall be the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Escrow Account" shall mean the account established by the Appendix A-1 Settling Defendants for purposes of collecting and distributing the payments made by the Appendix B Settling Defendants and the Settling Federal Agencies, and for collecting and utilizing the payments made by the Appendix A-2 Settling Defendants for the Work, in accordance with this Consent Decree and the completion of the Remedial Design pursuant to the RD SAO and the RD UAO.

"Escrow Agreement" shall mean the agreement establishing the Escrow Account in accordance with this Consent Decree attached hereto as Appendix C.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs or pays after the Effective Date in: 1) reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree; 2) overseeing implementation of the Work; or 3) otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies

4

paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), XV (Emergency Response), Paragraph 45 (Funding for Work Takeover), and Section XXIX (Community Relations**).**

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at the Site.

"Institutional Controls Implementation and Assurance Plan" or "ICIAP" shall mean the plan for implementing, maintaining, monitoring, and reporting on the Institutional Controls set forth in the ROD, prepared in accordance with the Statement of Work ("SOW").

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C.§ 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C.§ 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Mercury Refining Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C.§ 9622(b)(3).

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C.§ 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NYSDEC" shall mean the New York State Department of Environmental Conservation and any successor departments or agencies of the State.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Manual and the Site Management Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Appendix A-1 and Owner Settling Defendants) and the SOW, and maintenance, monitoring, and enforcement of Institutional Controls as provided in the ICIAP.

"Owner Settling Defendant" shall mean 26 Railroad Avenue, Inc.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, the United States paid at or in connection with the Site through the Effective Date plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Parties" shall mean the United States and Settling Defendants.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action as set forth in the ROD and the SOW.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 30, 2008, by the ERRD Director, EPA Region 2, or his/her delegate, and all attachments thereto.  The ROD is attached as Appendix D.

"Remedial Action" shall mean all activities Appendix A-1 Settling Defendants and/or Owner Settling Defendant are required to perform under the Consent Decree to implement the ROD, in accordance with the SOW, the approved remedial design submission, the approved Remedial Action Work Plan, and other plans approved by EPA, including implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, O&M, and the activities required under Section XXV (Retention of Records).

"Remedial Action Work Plan" shall mean the document developed pursuant to Section I.B.1. of the SOW and approved by EPA, and any modifications thereto.

"Remedial Design" shall mean those activities which were undertaken under the RD SAO and RD UAO.

"Remedial Design Report" shall mean the Remedial Design Report to be approved by EPA and to be submitted by the Appendix A-1 and Appendix A-2 Settling Defendants pursuant to the RD SAO and RD UAO.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Appendix A-1 Settling Defendants, Appendix A-2 Settling Defendants, Owner Settling Defendant, and Appendix B Settling Defendants.

"Settling Federal Agencies" shall mean those federal agencies, departments or instrumentalities of the United States identified in Appendix E and their successors.

"Site" shall mean the Mercury Refining Superfund Site, which includes an approximately ½ -acre parcel located at 26 Railroad Avenue, Towns of Colonie and Guilderland, Albany County, New York, and all areas to which contamination has migrated including adjacent properties, the unnamed tributary to the Patroon Creek and the I-90 Pond.  The Site is depicted generally on the map attached as Appendix F.

"State" shall mean the State of New York.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Action and O&M at the Site, as set forth in Appendix G to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Appendix A-1 Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and the Settling Federal Agencies.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C.§ 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities and obligations Appendix A-1 Settling Defendants are required to perform under this Consent Decree and the activities and obligations that Owner Settling Defendant is required to perform under this Consent Decree including Appendix H (Agreement between Appendix A-1 Settling Defendants and Owner Settling Defendant), except the activities required under Section XXV (Retention of Records).

V.       GENERAL PROVISIONS

5.    Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the implementation of response actions at the Site by Appendix A-1 Settling Defendants and/or Owner Settling Defendant, to pay response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants and the claims of the Settling Defendants which have been or could have been asserted against the United States with regard to this Site as provided in this Consent Decree.

6.    Commitments by Settling Defendants and Settling Federal Agencies.

a.     Appendix A-1 Settling Defendants shall finance and perform the Work, in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Appendix A-1 Settling Defendants and approved by EPA pursuant to this Consent Decree. Appendix A-1 Settling Defendants shall also pay EPA for certain costs as provided in this Consent Decree.  The obligations of Appendix A-1 Settling Defendants to finance and perform the Work, including obligations to pay Future Response Costs as provided in this Consent Decree, are joint and several.  In the event of the insolvency of any Appendix A-1 Settling Defendant or the failure by any Appendix A-1 Settling Defendant to implement any requirement of this Consent Decree, the remaining Appendix A-1 Settling Defendants shall complete all such requirements.

b.     Appendix A-2 Settling Defendants shall pay into the Escrow Account the amount set forth in Paragraph 52.a.  The obligations of Appendix A-2 Settling Defendants to pay that amount are joint and several.  In the event of the insolvency of any Appendix A-2 Settling Defendant or the failure by any Appendix A-2 Settling Defendant to comply with any requirement of this Consent Decree applicable to the Appendix A-2 Settling Defendants, the remaining Appendix A-2 Settling Defendants shall complete all such requirements.

c.     Each Appendix B Settling Defendant shall pay into the Escrow Account its respective share as set forth in Appendix B and in accordance with this Consent Decree.

d.     The United States, on behalf of Settling Federal Agencies, shall pay into the Escrow Account the amount set forth in Paragraph 54.a.

e.     Owner Settling Defendant shall perform that portion of the Work required pursuant to the Agreement between Appendix A-1 Settling Defendants and Owner Settling Defendant attached hereto as Appendix H.   The United States is not a party to that agreement. As to the Work required under Appendix H, Owner Settling Defendant and Appendix A-1 Settling Defendants are jointly and severally liable. In the event of the insolvency of Owner Settling Defendant or the failure by Owner Settling Defendant to implement any requirement specifically set forth in this Consent Decree or Appendix H as an obligation of Owner Settling Defendant, Appendix A-1 Settling Defendants shall complete all such requirements.

(1)     In any circumstance where the United States determines that there is an instance of noncompliance under this Consent Decree, to the extent that the noncompliance relates to Owner Settling Defendant's obligations under Appendix H, the United States agrees initially to seek performance by Owner Settling Defendant to correct any deficiencies and to comply with the requirements of this Consent Decree in advance of seeking such relief from Appendix A-1 Settling Defendants.

(2)     If EPA transmits to Owner Settling Defendant and Appendix A-1 Settling Defendants a written notification that EPA disapproves, in whole or in part, any Work performed or to be performed by Owner Settling Defendant under Appendix H of this Consent Decree, the United States agrees that during the thirty (30) day period, or such other period established under Section XI (EPA Approval of Plans, Reports, and Other Deliverables) of this Consent Decree subsequent to such notification, stipulated penalties shall not accrue against the Appendix A-1 Settling Defendants under this subparagraph relating to such disapproval.  The 31st day shall represent the first day of noncompliance (if noncompliance has not been corrected prior to that date) for the purposes of determining the amount of any penalty that the United States may assess against Appendix A-1 Settling Defendants.  During the initial 30-day period, as well as any period of noncompliance prior to such notification under this subparagraph, penalties shall accrue against and be payable by the Owner Settling Defendant. Appendix A-1 Settling Defendants shall remain jointly and severally liable for any stipulated penalties that accrue beyond the 30-day period following notification under this subparagraph.

7.     Compliance With Applicable Law.  All activities undertaken by Appendix A-1 Settling Defendants and/or Owner Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and

regulations.  Appendix A-1 Settling Defendants and Owner Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.      Permits.

a.      As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work, including excavation of sediment in the unnamed tributary). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Appendix A-1 Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.      Appendix A-1 Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.      This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.      Notice to Successors-in-Title and Transfers of Real Property.  Owner Settling Defendant shall, within 15 days after the Effective Date, submit to EPA for review and approval a proposed notice to be filed with the appropriate land records office that provides a description of the real property and provides notice to all successors-in-title that the real property is part of the Site, that EPA has selected a remedy for the Site, and that potentially responsible parties have entered into a Consent Decree requiring implementation of the remedy selected in the ROD.  The notice also shall describe the land use restrictions, if any, set forth in Paragraphs 24.b and 25.b. Such notice(s) shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court.  Owner Settling Defendant shall record the notice(s) within ten days after EPA's approval of the notice(s).  Owner Settling Defendant shall provide EPA with a certified copy of the recorded notice(s) within ten days after recording such notice(s).

VI.      PERFORMANCE OF THE WORK BY APPENDIX A-1 AND OWNER SETTLING DEFENDANTS

10.      Selection of Supervising Contractor.

a.      All aspects of the Work to be performed by Appendix A-1 Settling Defendants pursuant to Sections VI (Performance of the Work by Appendix A-1 and Owner Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling, and Data Analysis), IX (Access and Institutional Controls), and XV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Within 14 days after EPA approval of the RD Report or the Effective Date, whichever is later, Appendix A-1 Settling Defendants shall notify EPA in

9

writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. The proposed Supervising Contractor, as well as all other contractors and subcontractors who engage in the "practice of engineering" at the Site on behalf of Appendix A-1 Settling Defendants (as the "practice of engineering" is defined at Section 7201 of the New York State Education law), must comply with all applicable New York State legal requirements regarding the practice of engineering with the State of New York, including all applicable requirements of the New York State Education law and Business Corporation law. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Appendix A-1 Settling Defendants propose to change a Supervising Contractor, Appendix A-1 Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree. Appendix A-1 Settling Defendants may identify the same individual as the Supervising Contractor and the Project Coordinator.

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Appendix A-1 Settling Defendants in writing. Appendix A-1 Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, which would be acceptable to them within 30 days after receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Appendix A-1 Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days after EPA's authorization to proceed.

c.      If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Appendix A-1 Settling Defendants from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Appendix A-1 Settling Defendants may seek relief under Section XVIII (Force Majeure).

11.   Remedial Action.

a.      Appendix A-1 Settling Defendants shall fully implement and comply with the SOW which is attached hereto as Appendix G and incorporated herein by reference. Owner Settling Defendant shall implement and comply with those portions of the SOW which relate to the Work to be performed under Appendix H. The Work to be performed by Appendix A-1 Settling Defendants pursuant to this Consent Decree shall at a minimum achieve the requirements of, and be performed in a manner consistent with, the ROD, the approved Remedial Design Report, and this Consent Decree.

b.      Appendix A-1 Settling Defendants shall continue to implement the Remedial Action until the Performance Standards are achieved.

c.      Appendix A-1 Settling Defendants and Owner Settling Defendant shall implement O&M in accordance with the SOW and Appendix H for so long thereafter as is required by this Consent Decree.

12.    Modification of SOW or Related Work Plans.

a.    If EPA determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Appendix A-1 Settling Defendants of such modification.

b.    For the purposes of this Paragraph and Paragraphs 47 (Completion of the Remedial Action) and 48 (Completion of the Work) only, the "scope of the remedy set forth in the ROD" is:

Excavation and off-Site disposal of surface soils and subsurface soils above the water table from the Mercury Refining Company, Inc. property and adjoining properties (*i.e.*, Albany Pallet and Box Company (Albany Pallet), Allied Building Products Corporation (Allied Building) and Diamond W. Products Incorporated (Diamond W)) which exceed the cleanup level for mercury in soil of 5.7 parts per million (ppm) for industrial property usage. These soils also include the soils associated with the stormwater sewer/catch basin systems. Verification sampling will be performed to confirm the effectiveness of the remedy. Clean soil will be backfilled into the excavated areas.

Solidification/Stabilization involving mixing or injection of treatment agents at the Mercury Refining and Allied Building properties to immobilize contaminants in surface soils, subsurface soils (including soils beneath the existing asphalt/concrete cap but not soils beneath the Container Storage Building or the existing clay cap) and soils below the water table where the groundwater has a dissolved mercury concentration which exceeds the cleanup level of 0.7 parts per billion (ppb) for mercury in groundwater. Pilot testing will be performed before treatment and verification sampling will be performed after treatment to confirm the effectiveness of the remedy in immobilizing contaminated soils and achieving groundwater standards.

Imposition of institutional controls in the form of environmental easements/ restrictive covenants to restrict future development/use of the Site. Specifically, environmental easements/restrictive covenants will be filed in the property records of Albany County. The easements/covenants will at a minimum: (a) limit the Site to industrial uses; (b) preserve the integrity of the existing clay cap on the southern portion of the Mercury Refining Property; (c) preserve the integrity of the solidified/stabilized mass; (d) prevent the excavation of soils which lay beneath the Phase 1 Building, which housed Mercury Refining's operations, and the Container Storage Building, which was used to store incoming mercury bearing material for processing (see map at Appendix F), unless the excavation follows a Site Management Plan (see below); and (e) restrict the use of groundwater as a source of potable or process water until groundwater quality standards are met.

11

Development and implementation of an EPA-approved Site Management Plan (SMP).  The SMP, will, among other things, address long-term operation and maintenance ("O&M") of the Site, and future excavation of soils, including, but not limited to, soils beneath the Phase 1 and Container Buildings on the Mercury Refining property, and soils on the Albany Pallet, the Allied Building, and the Diamond W properties which will not be remediated by this remedy, to insure that the soils are properly tested and handled to protect the health and safety of workers and the nearby community.  The approved SMP will also require an evaluation of the potential for vapor intrusion at all existing buildings on-Site and/or those to be constructed in the future, and mitigation, if necessary, in compliance with the SMP.  Finally, the SMP will provide for the proper management of all Site remedy components post-construction and shall include: (a) monitoring of groundwater to ensure that, following Site remediation, the contamination has attenuated and the groundwater has been remediated; (b) monitoring and maintenance of institutional controls; (c) a provision for operation and maintenance of the clay cap;  (d) periodic certifications by the owners/operators of the Site properties or other party implementing the remedy that the institutional and engineering controls are in place; and (e) a provision to manage the demolition or alteration of the existing buildings on-Site, if such demolition or alteration is required in the future, to protect the health and safety of the workers and the nearby community and to ensure proper disposal of any building debris.

Removal, dewatering and disposal of the mercury-contaminated sediments in the Unnamed Tributary exceeding the cleanup level for mercury in sediments of 1.3 ppm.

Verification sampling will be performed to confirm the effectiveness of the remedy.

Sampling of the fish, surface water and sediments in the Patroon Creek, the Unnamed Tributary and the I-90 Pond to assess impacts on the biota on an annual basis for five years. Sampling thereafter will be based on the results of the five annual sampling rounds, as reported within the first five-year review. Should conditions change with regard to the I-90 Pond dam (i.e., the dam is repaired, removed, or if it should fail), EPA will evaluate the potential impact of any significant releases and, if necessary, take or require response actions to mitigate their potential impact.

c.    If Appendix A-1 Settling Defendants object to the modification they may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 70 (Record Review).

d.    The SOW and/or related work plans shall be modified: (1) in accordance with the modification issued by EPA; or (2) if Appendix A-1 Settling Defendants invoke dispute resolution, in accordance with the final resolution of the dispute.  The modification shall be incorporated into and enforceable under this Consent Decree, and Appendix A-1 Settling Defendants shall implement all work required by such modification.  Appendix A-1 Settling

12

Defendants shall incorporate the modification into the Remedial Action Work Plan required by the SOW, as appropriate.

        e.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

       13.    Nothing in this Consent Decree, the SOW, or the Remedial Action Work Plan constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plan will achieve the Performance Standards.

       14.    <u>Off-Site Shipment of Waste Material</u>.

        a.    Appendix A-1 Settling Defendants may ship Waste Material from the Site to an off-Site facility only if they verify, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C.§ 9621(d)(3), and 40 C.F.R.§ 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C.§ 9621(d)(3) and 40 C.F.R.§ 300.440.

        b.    Appendix A-1 Settling Defendants may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator.  This notice requirement shall not apply to any off-Site shipments when the total quantity of all such shipments will not exceed ten cubic yards.  The written notice shall include the following information, if available: (1) the name and location of the receiving facility; (2) the type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation.  Appendix A-1 Settling Defendants also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility.  Appendix A-1 Settling Defendants shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

<h3 style="text-align:center">VII.    REMEDY REVIEW</h3>

       15.    <u>Periodic Review</u>.  Appendix A-1 Settling Defendants shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C.§ 9621(c), and any applicable regulations.

       16.    <u>EPA Selection of Further Response Actions</u>.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

       17.    <u>Opportunity To Comment</u>.  Appendix A-1 Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C.§ 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

18.   Appendix A-1 Settling Defendants' Obligation To Perform Further Response Actions.  If EPA selects further response actions relating to the Site, EPA may require Appendix A-1 Settling Defendants to perform such further response actions, but only to the extent that the reopener conditions in Paragraph 88 or Paragraph 89 (United States' Pre- and Post-Certification Reservations) are satisfied.  Appendix A-1 Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of Paragraph 88 or Paragraph 89 are satisfied, (b) EPA's determination that the Remedial Action is not protective of human health and the environment, or (c) EPA's selection of the further response actions.  Disputes pertaining to whether the remedy is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 70 (Record Review).

19.   Submission of Plans.  If Appendix A-1 Settling Defendants are required to perform further response actions pursuant to Paragraph 18, within thirty (30) days of EPA's request, Appendix A-1 Settling Defendants shall submit a plan for such response action to EPA for approval in accordance with the procedures of Section VI (Performance of the Work by Appendix A-1 and Owner Settling Defendants) and the SOW.  Appendix A-1 Settling Defendants shall implement the approved plan in accordance with this Consent Decree.

VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

20.   Quality Assurance.

a.   Appendix A-1 Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with the *Uniform Federal Policy for Quality Assurance Project Plans* (UFP-QAPP), Parts 1, 2 and 3, EPA-505-B-04-900A, B and C, March 2005 and subsequent amendments to such guidelines upon notification by EPA to Appendix A-1 Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.

b.   Prior to the commencement of any monitoring project under this Consent Decree, Appendix A-1 Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP, and applicable guidance documents.  The QAPP may be a modification of the EPA-approved Remedial Design QAPP.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Appendix A-1 Settling Defendants shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Appendix A-1 Settling Defendants in implementing this Consent Decree.  In addition, Appendix A-1 Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Appendix A-1 Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Consent Decree;

14

however, upon approval by EPA, after opportunity for review and comment by the State, Appendix A-1 Settling Defendants may use other analytical methods that are as stringent as or more stringent than the CLP-approved methods.  Appendix A-1 Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program. Appendix A-1 Settling Defendants shall use only laboratories that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Appendix A-1 Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

21.     Upon request, Appendix A-1 Settling Defendants shall allow split or duplicate samples to be taken by EPA or its authorized representatives.  Appendix A-1 Settling Defendants shall notify EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA shall have the right to take any additional samples that EPA deems necessary.  Upon request, EPA shall allow Appendix A-1 Settling Defendants to take split or duplicate samples of any samples it takes as part of Plaintiff's oversight of Appendix A-1 Settling Defendants' implementation of the Work.

22.     Appendix A-1 Settling Defendants shall submit to EPA three (3) copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Appendix A-1 Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

23.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

IX.     ACCESS AND INSTITUTIONAL CONTROLS

24.     If the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by Owner Settling Defendant and/or an Appendix A-1 Settling Defendant:

a.     such Owner Settling Defendant and/or Appendix A-1 Settling Defendant shall, commencing on the Effective Date provide the United States and the other Appendix A-1 Settling Defendants, and their representatives, contractors, and subcontractors, with access at all reasonable times to the Site, or such other real property, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations regarding contamination at or near the Site;

15

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Construction Quality Assurance Plan ("CQAP");

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 92 (Work Takeover);

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Appendix A-1 Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Appendix A-1 Settling Defendants' and/or Owner Settling Defendant's compliance with the Consent Decree;

(10)    Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)    Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls and the requirements of the ICIAP.

b.      commencing on the Effective Date, such Appendix A-1 Settling Defendants and Owner Settling Defendant, shall not use the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action and O&M. Appendix A-1 Settling Defendants and Owner Settling Defendant agree to the following land/water use restrictions  set forth in the ROD, including, but not limited to: (a) limiting the Site to industrial uses; (b) preserving the integrity of the existing clay cap on the southern portion of the Mercury Refining Property; (c) preserving the integrity of the solidified/stabilized mass; (d) preventing the excavation of soils which lay beneath the Phase 1 Building and the Container Storage Building, and soils on the Albany Pallet, the Allied Building, and the Diamond W properties which will not be remediated by this remedy, shown on the map attached as Appendix F unless the excavation follows a site management plan; and (e) restricting the use of groundwater as a source of potable or process water until groundwater quality standards are met; and

c.       such Appendix A-1 Settling Defendants and/or Owner Settling Defendant shall:

(1)     If EPA so requests, execute and record in the Albany County Clerk's Office, State of New York, Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 24.a., and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 24.b., including, but not limited to, the specific restrictions listed therein and any land/water use restrictions listed in the ICIAP, as further specified in this Paragraph 24.c.(2)-(3). The Proprietary Controls shall be granted to one or more of the following persons as determined by EPA: (i) the United

16

States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the other Appendix A-1 Settling Defendants and their representatives and/or (iv) other appropriate grantees. Proprietary Controls, other than those granted to the United States, shall include a designation that EPA (and/or the State as appropriate) is a "third-party beneficiary," allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property. If any Proprietary Controls are granted to any Appendix A-1 Settling Defendant pursuant to this Paragraph 24.c.(1)(iii), then such Settling Defendants shall monitor, maintain, report on, and enforce such Proprietary Controls.

(2)     In accordance with the schedule set forth in the ICIAP, Appendix A-1 Settling Defendants and/or Owner Settling Defendant, shall submit to EPA for review and approval regarding such real property: (i)  draft Proprietary Controls, in substantially the form attached hereto as Appendix I, that are enforceable under the laws of the State of New York; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, which shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Appendix A-1 Settling Defendants and/or Owner Settling Defendant are unable to obtain release or subordination of such prior liens or encumbrances).

(3)     Within fifteen (15) days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, Appendix A-1 Settling Defendants and/or Owner Settling Defendant, shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the Albany County Clerk's Office. Within thirty (30) days of recording the Proprietary Controls, such Appendix A-1 Settling Defendant and/or Owner Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Control showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

25.     If the Site, or any other real property where access and/or land/water use restrictions are needed, is owned or controlled by persons other than Owner Settling Defendant and/or an Appendix A-1 Settling Defendant, Appendix A-1 Settling Defendants shall use best efforts to secure from such persons:

a.     an agreement to provide access thereto for the United States, Owner Settling Defendant, and Appendix A-1 Settling Defendants, and their representatives, contractors, and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 24.a;

b.     an agreement, enforceable by Appendix A-1 Settling Defendants and the United States, to refrain from using the Site, or such other real property, in any manner that EPA

17

determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. The agreement shall include, but not be limited to, the land/water use restrictions listed in Paragraph 24.b; and

c.   (1)   If EPA so requests, the execution and recordation in the Albany County Clerk's Office, State of New York Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 24.a., and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 24.b., including, but not limited to, the specific restrictions listed therein and any land/water use restrictions listed in the ICIAP, as further specified in this Paragraph 25.c.(2)-(3). The Proprietary Controls shall be granted to one or more of the following persons as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) Appendix A-1 Settling Defendants and their representatives and/or (iv) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA (and/or the State as appropriate) is a "third-party beneficiary," allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property. If any Proprietary Controls are granted to any Appendix A-1 Settling Defendants pursuant to this Paragraph 25.c.(1)(iii), then such Appendix A-1 Settling Defendants shall monitor, maintain, report on, and enforce such Proprietary Controls.

(2)   In accordance with the schedule set forth in the ICIAP, submit to EPA for review and approval regarding such real property: (i) draft Proprietary Controls, in substantially the form attached hereto as Appendix I, that are enforceable under the laws of the State of New York; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, which shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Appendix A-1 Settling Defendants is unable to obtain release or subordination of such prior liens or encumbrances).

(3)   Within fifteen (15) days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, Appendix A-1 Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the Albany County Clerk's Office. Within thirty (30) days of recording the Proprietary Controls, Appendix A-1 Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

26.     For purposes of Paragraphs 24 and 25, "best efforts" includes the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use, Proprietary Controls, and/or an agreement to release or subordinate a prior lien or encumbrance.  If within forty five (45) days of  EPA's request for Proprietary Controls, Appendix A-1 Settling Defendants and/or Owner Settling Defendant has not: (a) obtained agreements to provide access, restrict land/water use, or record Proprietary Controls, as required by Paragraph 24.a, 24.b, or 24.c; or (b) obtained, pursuant to Paragraph 24.c.(1) or 25.c.(1), agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Controls,  Appendix A-1 Settling Defendants and/or Owner Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that such Settling Defendants have taken to attempt to comply with Paragraph 24 or 25. The United States may, as it deems appropriate, assist Appendix A-1 Settling Defendants and/or Owner Settling Defendant in obtaining access, agreements to restrict land/water use, Proprietary Controls, or the release or subordination of a prior lien or encumbrance.  Appendix A-1 Settling Defendant and/or Owner Settling Defendant shall reimburse the United States under Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Proprietary Controls, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

27.     If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed, Appendix A-1 Settling Defendant and/or Owner Settling Defendant shall cooperate with EPA's efforts to secure and ensure compliance with such governmental controls.

28.     Notwithstanding any provision of the Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## X.     REPORTING REQUIREMENTS

29.     In addition to any other requirement of this Consent Decree, Appendix A-1 Settling Defendants shall submit to EPA and the State three copies of written monthly progress reports that: (a) describe the actions that have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Appendix A-1 Settling Defendants or their contractors or agents in the previous month; (c) identify all plans, reports, and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, that are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Appendix A-1 Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be

undertaken in the next six weeks. Appendix A-1 Settling Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following the later of EPA's Approval of the RD Report or the Effective Date, until EPA notifies Appendix A-1 Settling Defendants pursuant to Paragraph 48.b. of Section XIV (Certification of Completion). If requested by EPA, Appendix A-1 Settling Defendants shall also provide briefings for EPA to discuss the progress of the Work.

30.    Appendix A-1 Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

31.    Upon the occurrence of any event during performance of the Work that Appendix A-1 Settling Defendants and/or Owner Settling Defendant are required to report pursuant to Section 103 of CERCLA, 42 U.S.C.§ 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C.§ 11004, Appendix A-1 Settling Defendants and/or Owner Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Chief of the Response and Prevention Branch of the Emergency and Remedial Response Division of EPA, Region 2, at (732) 321-6656, or, if such person or his/her delegee is unavailable, the EPA Region 2 Emergency 24-hour Hot Line at (732) 548-8730. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

32.    Within 20 days after the onset of such an event, Appendix A-1 Settling Defendants shall furnish to EPA a written report, signed by Appendix A-1 Settling Defendants' Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto. Within 30 days after the conclusion of such an event, Appendix A-1 Settling Defendants shall submit a report setting forth all actions taken in response thereto.

33.    Appendix A-1 Settling Defendants shall submit 3 copies of all plans, reports, data, and other deliverables required by the SOW, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Appendix A-1 Settling Defendants shall simultaneously submit 3 copies of all such plans, reports, data, and other deliverables to the State. Upon request by EPA, Appendix A-1 Settling Defendants shall submit in electronic form all or any portion of any deliverables Appendix A-1 Settling Defendants are required to submit pursuant to the provisions of this Consent Decree. All deliverables submitted by Appendix A-1 Settling Defendants to EPA that purport to document Appendix A-1 Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of Appendix A-1 Settling Defendants.

XI.    EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

34.    Initial Submissions.

a.    After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (1) approve, in whole or in part, the submission;

(2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.      EPA also may modify the initial submission to cure deficiencies in the submission if: (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

35.      Resubmissions.  Upon receipt of a notice of disapproval under Paragraph 34.a(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 34.a(2), Appendix A-1 Settling Defendants shall, within 14 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Appendix A-1 Settling Defendants to correct the deficiencies; or (e) any combination of the foregoing.

36.      Material Defects.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 34.b(2) or 35 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 73.a.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Appendix A-1 Settling Defendants' submissions under this Section.

37.      Implementation.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 34 (Initial Submissions) or Paragraph 35 (Resubmissions), of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Appendix A-1 Settling Defendants, shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 34 or 35 shall not relieve Appendix A-1 Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII.     PROJECT COORDINATORS

38.      Within 20 days after the later of EPA's approval of the RD Report or the Effective Date, Appendix A-1 Settling Defendants and EPA will notify each other, in writing, of the name, address, telephone number and email address of their respective designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.  Appendix A-1 Settling Defendants' Project

Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  Appendix A-1 Settling Defendants' Project Coordinator shall not be an attorney for any Settling Defendant in this matter.  He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

39.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300.  EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

40.     EPA's Project Coordinator and Appendix A-1 Settling Defendants' Project Coordinator will communicate, at a minimum, on a monthly basis either telephonically or in person or at such other frequency as EPA determines is appropriate.

## XIII.     PERFORMANCE GUARANTEE

41.     In order to ensure the full and final completion of the Work, Appendix A-1 Settling Defendants shall establish and maintain a performance guarantee, initially in the amount of $8,196,146 for the benefit of EPA (hereinafter "Estimated Cost of the Work").  The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Appendix A-1 Settling Defendants intend to use multiple mechanisms, such multiple mechanisms shall be limited  to those set forth in subparagraphs a-d, below, i.e., surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.     A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.     A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency;

d.     A policy of insurance that (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier (i) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and examined by a federal or state agency;

e.     A demonstration by one or more Appendix A-1 Settling Defendants that each such Settling Defendant meets the financial test criteria of 40 C.F.R.§ 264.143(f) with respect to the  Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R.§ 264.143(f) are met to EPA's satisfaction; or

f.     A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (1) a direct or indirect parent company of an Appendix A-1 Settling Defendant, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R.§ 264.141(h)) with at least one such Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R.§ 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

42.     Appendix A-1 Settling Defendants have proposed as an initial performance guarantee the financial test pursuant to Paragraph 41.e. Within ten days after the Effective Date, Appendix A-1 Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the proposed performance guarantee(s) legally binding in a form substantially identical to the documents attached hereto as Appendix J, and such performance guarantee(s) shall thereupon be fully effective. Within 30 days after the Effective Date, Appendix A-1 Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer, the United States and EPA in accordance with Section XXVII (Notices and Submissions).

43.     If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 48, Appendix A-1 Settling Defendants provide a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 41.e or 41.f, the relevant Appendix A-1 Settling Defendants shall also comply with the other relevant requirements of 40 C.F.R.§ 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to: (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at: http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf; (b) the annual resubmission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R.§ 264.143(f)(1) and in any event within 90 days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements.  For purposes of the performance guarantee mechanisms specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms 'owner' and "operator" shall be deemed to refer to each Appendix

23

A-1 Settling Defendant making a demonstration under Paragraph 41.e; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Site.

44.     In the event that EPA determines at any time that a performance guarantee provided by any Appendix A-1 Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Appendix A-1 Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Appendix A-1 Settling Defendants, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after any such Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 41 that satisfies all requirements set forth in this Section XIII; provided, however, that if any Appendix A-1 Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that the Appendix A-1 Settling Defendants shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for such Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 30 days.  On day 30, Appendix A-1 Settling Defendants shall provide to EPA a status report on their efforts to obtain the revised or alternative form of guarantee.  In seeking approval for a revised or alternative form of performance guarantee, Appendix A-1 Settling Defendants shall follow the procedures set forth in Paragraph 46.c.  Appendix A-1 Settling Defendants' inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Appendix A-1 Settling Defendants to complete the Work in strict accordance with the terms of this Consent Decree.

45.     Funding for Work Takeover.  The commencement of any Work Takeover pursuant to Paragraph 92 shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 41.a, 41.b, 41.c, 41.d, or 41.f, and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.  Upon the commencement of any Work Takeover, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 41.e or Paragraph 41.f (2), Appendix A-1 Settling Defendants (or in the case of Paragraph 41.f(2), the guarantor) shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date, as determined by EPA.  In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism

24

it has issued, then, unless Appendix A-1 Settling Defendants provide a substitute performance guarantee mechanism in accordance with this Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee. All EPA Work Takeover costs not reimbursed under this Paragraph shall be reimbursed under Section XVI (Payments for Response Costs).

      46.    <u>Modification of Amount and/or Form of Performance Guarantee.</u>

      a.    <u>Reduction of Amount of Performance Guarantee.</u>  If Appendix A-1 Settling Defendants believe that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 41, Appendix A-1 Settling Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work. Appendix A-1 Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated. In seeking approval for a reduction in the amount of the performance guarantee, Appendix A-1 Settling Defendants shall follow the procedures set forth in Paragraph 46.c for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 46.a. If EPA decides to accept Appendix A-1 Settling Defendants' proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Appendix A-1 Settling Defendants' written proposal or to some other amount as selected by EPA, EPA will notify the petitioning Appendix A-1 Settling Defendants of such decision in writing. Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of completing the Work set forth in EPA's written decision. After receiving EPA's written decision, Appendix A-1 Settling Defendants may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 46.c. In the event of a dispute, Appendix A-1 Settling Defendants may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution). No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 44 or 46.b. and c.

      b.    <u>Change of Form of Performance Guarantee.</u> If, after the Effective Date, Appendix A-1 Settling Defendants desire to change the form or terms of any performance guarantee(s) provided pursuant to this Section, Appendix A-1 Settling Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder. The submission of such proposed revised or alternative performance guarantee shall be as provided in 46.c. Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Appendix A-1 Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

c.      Appendix A-1 Settling Defendants shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding.  The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section.  Appendix A-1 Settling Defendants shall submit such proposed revised or alternative performance guarantee to EPA's Project Manager and Site Attorney in accordance with Section XXVII (Notices and Submissions).  EPA will notify Appendix A-1 Settling Defendants in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph.  Within ten days after receiving a written decision approving the proposed revised or alternative performance guarantee, Appendix A-1 Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective.  Within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee, Appendix A-1 Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA and the United States at the addresses set forth in Section XXVI (Notices and Submissions).

d.      <u>Release of Performance Guarantee</u>. Appendix A-1 Settling Defendants shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph.  If Appendix A-1 Settling Defendants receive written notice from EPA in accordance with Paragraph 48 that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Appendix A-1 Settling Defendants in writing, Appendix A-1 Settling Defendants may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section.  In the event of a dispute, Appendix A-1 Settling Defendants may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

XIV.    CERTIFICATION OF COMPLETION

47.     <u>Completion of the Remedial Action</u>.

a.      Within 90 days after Appendix A-1 Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been achieved, Appendix A-1 Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Appendix A-1 Settling Defendants and EPA.  If, after the pre-certification inspection, Appendix A-1 Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been achieved, they shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables) within 30 days after the inspection.  In the report, a registered professional engineer and Appendix A-1 Settling Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree.  The written report shall include as-built drawings signed and stamped by a

professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of an Appendix A-1 Settling Defendant or Appendix A-1 Settling Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Appendix A-1 Settling Defendants in writing of the activities that must be undertaken by Appendix A-1 Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Appendix A-1 Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 12.a.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Appendix A-1 Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Appendix A-1 Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Appendix A-1 Settling Defendants.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXII (Covenants by Plaintiff).  Certification of Completion of the Remedial Action shall not affect Appendix A-1 Settling Defendants' remaining obligations under this Consent Decree.

48.    Completion of the Work.

a.      Within 90 days after Appendix A-1 Settling Defendants conclude that all phases of the Work, other than any remaining activities required under Section VII (Remedy Review), have been fully performed, Appendix A-1 Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Appendix A-1 Settling Defendants and EPA. If, after the pre-certification inspection, Appendix A-1 Settling Defendants still believe that the Work has been fully performed, Appendix A-1 Settling Defendants shall submit a written

report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the statement set forth in Paragraph 47.a, signed by a responsible corporate official of an Appendix A-1 Settling Defendant or Appendix A-1 Settling Defendants' Project Coordinator. If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Appendix A-1 Settling Defendants in writing of the activities that must be undertaken by Appendix A-1 Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Appendix A-1 Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 12.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Appendix A-1 Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Appendix A-1 Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Appendix A-1 Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Appendix A-1 Settling Defendants in writing.

## XV.     EMERGENCY RESPONSE

49.     If any action or occurrence during the performance of the Work that causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Appendix A-1 Settling Defendants shall, subject to Paragraph 50, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, Appendix A-1 Settling Defendants shall notify the Chief of the Response and Prevention Branch of the Emergency and Remedial Response Division of EPA, Region 2, at (732) 321-6656, or, if such person or his/her delegee is unavailable, the EPA Region 2 Emergency 24-hour Hot Line at (732) 548-8730. Appendix A-1 Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Appendix A-1 Settling Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Appendix A-1 Settling Defendants shall reimburse EPA all costs of the response action under Section XVI (Payments for Response Costs).

50.     Subject to Section XXII (Covenants by Plaintiff), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from

the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

XVI.   PAYMENTS FOR RESPONSE COSTS

51.   <u>Establishment of the Escrow Account.</u>  Within ten (10) days of the date of lodging of this Consent Decree with the Court, the Appendix A-1 Settling Defendants shall submit the Escrow Agreement, as defined above, to the EPA for review and approval.  Such Escrow Agreement shall not deviate substantially from the draft Escrow Agreement attached hereto as Appendix C.  Within five (5) days of EPA approval of the Escrow Agreement, Appendix A-1 Settling Defendants shall execute the Escrow Agreement.  Within five (5) days of execution of the Escrow Agreement, the Appendix A-1 Settling Defendants shall cause the Escrow Agent to activate the Escrow Account.  The Escrow Account will be used to collect and disburse the payments made by the Appendix B Settling Defendants pursuant to Paragraph 52, payments made on behalf of the Settling Federal Agencies by the United States and the United States Postal Service ("USPS") pursuant to Paragraph 54 and to collect and utilize the payments made by the Appendix A-2 Settling Defendants in accordance with Paragraph 52.

52.   <u>Payments by Appendix A-2 Settling Defendants and Appendix B Settling Defendants</u>.

a.   Within 30 days after the Effective Date, Appendix A-2 Settling Defendants shall pay $1,300,000 into the Escrow Account in accordance with the instructions in Paragraph 56.a. (Instructions for Payments into the Escrow Account) and d. (Instructions for All Payments), below.  Such funds shall be used by the Appendix A-1 Settling Defendants solely for the performance of the Work under this Consent Decree and the Remedial Design pursuant to the RD SAO and the RD UAO.

b.   Within 30 days after the Effective Date, each Appendix B Settling Defendant shall pay into the Escrow Account its respective settlement amount shown on Appendix B in payment for Past Response Costs and certain Future Response Costs in accordance with the instructions in Paragraph 56.a. (Instructions for Payments into the Escrow Account) and d. (Instructions for All Payments), below.

(1) Within 60 days of the Effective Date, the first $850,000 of the amount paid into the Escrow Account by the Appendix B Settling Defendants shall be paid to the Appendix A-1 Settling Defendants.  If the Escrow Account contains less than $850,000 from the Appendix B Settling Defendants, then the total amount paid by the Appendix B Settling Defendants shall be paid to the Appendix A-1 Settling Defendants.

(2) Within 60 days of the Effective Date, Appendix A-1 Settling Defendants shall cause the Escrow Agent to pay to the United States all funds in excess of $850,000 in the Escrow Account which were paid by the Appendix B Settling Defendants.

c.   Appendix A-1 Settling Defendants shall cause the Escrow Agent to notify EPA that the payments required to be made pursuant to this Paragraph were deposited into the Escrow Account within five (5) days of the Escrow Agent's receipt of each payment made to the

29

Escrow Account pursuant to this Section.  Such notice shall include the payor's name, date of payment, and payment amount and shall be sent via e-mail to Sharon Kivowitz at kivowitz.sharon@epa.gov.

53.    Payments by Appendix A-1 Settling Defendants for Future Response Costs.

a.    Appendix A-1 Settling Defendants shall pay to EPA all Future Response Costs in excess of $1,000,000 not inconsistent with the NCP.

b.    On a periodic basis, EPA will send Appendix A-1 Settling Defendants a bill requiring payment that includes a printout of cost data from EPA's financial management system that includes direct and indirect costs and a DOJ case cost summary. Appendix A-1 Settling Defendants shall make all payments within 30 days after Appendix A-1 Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 57, in accordance with Paragraphs 56.c.  (Instructions for Future Response Cost Payments) and 56.d. (Instructions for All Payments).

c.    The total amount to be paid by Appendix A-1 Setting Defendants pursuant to Paragraphs 53.a and b shall be deposited by EPA in the Mercury Refining Superfund Site Special Account to be retained and used by EPA to conduct or finance future response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

54.    Payments by Settling Federal Agencies.

a.    As soon as reasonably practicable after the Effective Date, the United States, on behalf of Settling Federal Agencies other than the U.S. Postal Service, shall pay to Appendix A-1 Settling Defendants $1,999,000 in payment of Appendix A Settling Defendants' costs incurred and to be incurred pursuant to the RD SAO, the RD UAO and this Consent Decree. As soon as reasonably practicable after the Effective Date, the USPS shall pay to Appendix A-1 Settling Defendants $1,000 in payment of Appendix A Settling Defendants' costs incurred and to be incurred pursuant to the RD SAO, the RD UAO and this Consent Decree.  Such payments shall be made to the Escrow Account by Automated Clearing House Electronic Funds Transfer in accordance with instructions provided in Paragraph 56.a. (Instructions for Payments into the Escrow Account) and d. (Instructions for All Payments).

b.    Interest.  In the event that any payment required by Paragraphs 54.a. is not made within 120 days after the Effective Date, Interest on the unpaid balance shall be paid at the rate established pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with such Interest commencing on the 121st day after the Effective Date and accruing through the date of the payment.

55.    The Parties to this Consent Decree recognize and acknowledge that the payment obligations of the Settling Federal Agencies, other than the United States Postal Service, under this Consent Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

56.    Payment Instructions for Settling Defendants.

a.    Instructions for Payments into the Escrow Account.  All payments required to be made into the Escrow Account shall be made via electronic funds transfer to:

Pinnacle National Bank
211 Commerce Street
Nashville, TN  37201
ABA:  064008637
A/C:  5518222

b.    Disbursement of any remaining funds in the Escrow Account pursuant to Paragraph 52.b(2), shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to the Escrow Agent by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Northern District of New York.  The payment instructions provided by the Financial Litigation Unit will include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree.

c.    Future Response Costs Payments and Stipulated Penalties. All payments required by Paragraph 53, and Section XX of this Consent Decree shall be made by FedWire EFT to:

Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045
Field Tag 4200 of the FedWire message should read "D 68010727
Environmental Protection Agency"

d.    Instructions for All Payments.  All payments made under this Paragraph. shall reference the CDCS Number, Site/Spill ID Number 0276, and DOJ Case Number 90-11-2-07742/7.  At the time of any payment required to be made in accordance with this Paragraph, Settling Defendants shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXVII (Notices and Submissions).  With respect to payments to be made pursuant to subparagraphs b. and c. of this paragraph, notice shall also be sent to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at:

Regional Financial Management Officer
U.S. Environmental Protection Agency
26 W. Martin Luther King Drive
Cincinnati Finance Center, MS: NWD
Cincinnati, Ohio 45268

Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

e.    Notice to EPA of Receipt of All Payments.  In addition to the notices required pursuant to Paragraph 52.c., within sixty (60) days of the Effective Date, Appendix A-1

31

Settling Defendants shall cause the Escrow Agent to send a statement to EPA which includes all payments deposited into the Escrow Account from Appendix A-2 Settling Defendants, Appendix B Settling Defendants, Settling Federal Agencies (excluding the USPS) and the USPS.  The statement shall include each payor's name, the date of payment, and the amount of each payment.  The statement shall be sent via certified mail, return receipt requested in accordance with Section XXVII (Notices and Submissions).

57.     Appendix A-1 Settling Defendants may contest any Future Response Costs billed under Paragraph 53 (Payments by Appendix A-1 Settling Defendants for Future Response Costs) if they determine that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP.  Such objection shall be made in writing within 30 days after receipt of the bill and must be sent to the United States pursuant to Section XXVII (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, Appendix A-1 Settling Defendants shall pay all uncontested Future Response Costs to the United States within 30 days after Appendix A-1 Settling Defendants' receipt of the bill requiring payment.  Simultaneously, Appendix A-1 Settling Defendants shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  Appendix A-1 Settling Defendants shall send to the United States, as provided in Section XXVII (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.  Simultaneously with establishment of the escrow account, Appendix A-1 Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution).  If the United States prevails in the dispute, Appendix A-1 Settling Defendants shall pay the sums due (with accrued interest) to the United States within five days after the resolution of the dispute.  If Appendix A-1 Settling Defendants prevail concerning any aspect of the contested costs, Appendix A-1 Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States within five days after the resolution of the dispute.  Appendix A-1 Settling Defendants shall be disbursed any balance of the escrow account.  All payments to the United States under this Paragraph shall be made in accordance with Paragraphs 56.c. (Instructions for Future Response Cost Payments and Stipulated Penalties) and 56.d (Instructions for All Payments).  The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Appendix A-1 Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

58.     Interest.  In the event that any payment for Future Response Costs required under this Section is not made by the date required, Appendix A-1 Settling Defendants shall pay Interest on the unpaid balance.  The Interest on Future Response Costs shall begin to accrue on the date of the bill.  The Interest shall accrue through the date of Appendix A-1 Settling Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to

32

such other remedies or sanctions available to Plaintiffs by virtue of Appendix A-1 Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 75.

## XVII.   INDEMNIFICATION AND INSURANCE

59.   <u>Settling Defendants' Indemnification of the United States.</u>  The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Appendix A-1 Settling Defendants and/or Owner Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C.§ 9604(e).  Appendix A-1 Settling Defendants and Owner Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Appendix A-1 Settling Defendants and/or Owner Settling Defendant, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Appendix A-1 Settling Defendants and/or Owner Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA. Further, Appendix A-1 Settling Defendants and Owner Settling Defendant agree to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Appendix A-1 Settling Defendants and/or Owner Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree**.**  The United States shall not be held out as a party to any contract entered into by or on behalf of Appendix A-1 Settling Defendants and/or Owner Settling Defendant in carrying out activities pursuant to this Consent Decree.  Neither Appendix A-1 Settling Defendants, Owner Settling Defendant nor any such contractor shall be considered an agent of the United States.

60.   The United States shall give Appendix A-1 Settling Defendants and/or Owner Settling Defendant notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 60, and shall consult with Appendix A-1 Settling Defendants and/or Owner Settling Defendant prior to settling such claim.

61.   Appendix A-1 Settling Defendants and Owner Settling Defendant covenant not to sue and agree not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Appendix A-1 Settling Defendants and/or Owner Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Appendix A-1 Settling Defendants and Owner Settling Defendant shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Appendix A-1 Settling Defendants and/or Owner Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

33

62.     No later than 15 days before commencing any on-site Work, Appendix A-1 Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 47.b of Section XIV (Certification of Completion), commercial general liability insurance with limits of ten (10) million dollars, for any one occurrence, and automobile liability insurance with limits of ten (10) million dollars, combined single limit, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Appendix A-1 Settling Defendants pursuant to this Consent Decree.  In addition, for the duration of this Consent Decree, Appendix A-1 Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Appendix A-1 Settling Defendants in furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent Decree, Appendix A-1 Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy.  Appendix A-1 Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.  If Appendix A-1 Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Appendix A-1 Settling Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII.   FORCE MAJEURE

63.     **"**Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Appendix A-1 Settling Defendants and/or Owner Settling Defendant, or any entity controlled by Appendix A-1 Settling Defendants and/or Owner Settling Defendant, or of Appendix A-1 Settling Defendants' contractors and/or Owner Settling Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Appendix A-1 Settling Defendants' and/or Owner Settling Defendant's best efforts to fulfill the obligation.  The requirement that Appendix A-1 Settling Defendants and/or Owner Settling Defendant's exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible.  "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

64.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Appendix A-1 Settling Defendants and/or Owner Settling Defendant intend or may intend to assert a claim of force majeure, Appendix A-1 Settling Defendants and/or Owner Settling Defendant shall notify EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Emergency and Remedial Response Division, EPA Region 2, within 48 hours of when Appendix A-1 Settling Defendants and/or Owner Settling Defendant first knew that the event might cause a delay.  Within 5 days thereafter, Appendix A-1 Settling Defendants and/or Owner Settling Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated

duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Appendix A-1 Settling Defendants' and/or Owner Settling Defendant's rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Appendix A-1 Settling Defendants and/or Owner Settling Defendant that such event may cause or contribute to an endangerment to public health or welfare, or the environment. Appendix A-1 Settling Defendants and/or Owner Settling Defendant shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Appendix A-1 Settling Defendants and/or Owner Settling Defendant shall be deemed to know of any circumstance of which Appendix A-1 Settling Defendants and/or Owner Settling Defendants, any entity controlled by Appendix A-1 Settling Defendants and/or Owner Settling Defendant, or Appendix A-1 Settling Defendants' and/or Owner Settling Defendant's contractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Appendix A-1 Settling Defendants and/or Owner Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 63 and whether Appendix A-1 Settling Defendants and/or Owner Settling Defendant have exercised their best efforts under Paragraph 63, EPA may, in its unreviewable discretion, excuse in writing Appendix A-1 Settling Defendants' and/or Owner Settling Defendant's failure to submit timely notices under this Paragraph.

65.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Appendix A-1 Settling Defendants and/or Owner Settling Defendant in writing of its decision. If EPA agrees that the delay is attributable to a force majeure, EPA will notify Appendix A-1 Settling Defendants and/or Owner Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

66.    If Appendix A-1 Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Appendix A-1 Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Appendix A-1 Settling Defendants complied with the requirements of Paragraphs 63 and 64. If Appendix A-1 Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Appendix A-1 Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.    DISPUTE RESOLUTION

67.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes

regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Appendix A-1 Settling Defendants that have not been disputed in accordance with this Section.

68.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

69.     Statements of Position.

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Appendix A-1 Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Appendix A-1 Settling Defendants.  The Statement of Position shall specify Appendix A-1 Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 70 (Record Review) or Paragraph 71.

b.     Within 14 days after receipt of Appendix A-1 Settling Defendants' Statement of Position, EPA will serve on Appendix A-1 Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 70 (Record Review) or Paragraph 71.  Within 14 days after receipt of EPA's Statement of Position, Appendix A-1 Settling Defendants may submit a Reply.

c.     If there is disagreement between EPA and Appendix A-1 Settling Defendants as to whether dispute resolution should proceed under Paragraph 70 (Record Review) or Paragraph 71, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if Appendix A-1 Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 70 and 71.

70.     Record Review.

a.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Appendix A-1 Settling Defendants regarding the validity of the ROD's provisions.

b.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

c.      The ERRD Director of EPA Region 2, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 70.b. This decision shall be binding upon Appendix A-1 Settling Defendants subject only to the right to seek judicial review pursuant to Paragraphs 70.d and 70.e.

d.      Any administrative decision made by EPA pursuant to Paragraph 70.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Appendix A-1 Settling Defendants with the Court and served on all Parties within 10 days after receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Appendix A-1 Settling Defendants' motion.

e.      In proceedings on any dispute governed by this Paragraph, Appendix A-1 Settling Defendants shall have the burden of demonstrating that the decision of the ERRD Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 70.c.

71.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a.      Following receipt of Appendix A-1 Settling Defendants' Statement of Position submitted pursuant to Paragraph 69, the Director of the Emergency and Remedial Response Division, EPA Region 2, will issue a final decision resolving the dispute.  The ERRD Director's decision shall be binding on Appendix A-1 Settling Defendants unless, within ten days after receipt of the decision, Appendix A-1 Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Appendix A-1 Settling Defendants' motion.

b.      Notwithstanding Paragraph N (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

72.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Appendix A-1 Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 81.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Appendix A-1 Settling Defendants

37

do not prevail on the disputed issue, stipulated penalties shall be assessed on and paid by Appendix A-1 Settling Defendants as provided in Section XX (Stipulated Penalties).

XX.     STIPULATED PENALTIES

73.

a.     Appendix A-1 Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 74 and 75 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).  "Compliance" by Appendix A-1 Settling Defendants shall include completion of all payments and activities required under this Consent Decree, or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

b.     Appendix A-2 Settling Defendants and Appendix B Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraph 75 to the United States for failure to comply with the requirements of this Consent Decree as they relate to Appendix A-2 and/or Appendix B Settling Defendants.  "Compliance" by Appendix A-2 Settling Defendants and/or Appendix B Settling Defendants shall include completion of all payments and other activities required by Appendix A-2 and/or Appendix B Settling Defendants under this Consent Decree.

74.     Stipulated Penalty Amounts – Tier 1

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 74.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $   2,500 | 1st through 14th day |
| $   7,500 | 15th through 30th day |
| $  10,000 | 31st day and beyond |

b.     Compliance Milestones.

Submission and, if necessary, revisions and resubmission of any plan, report, or other deliverable required by Section VI (Performance of the Work by Appendix A-1 and Owner Settling Defendants) or by the SOW or by any plan which is prepared pursuant to Section VI or the SOW and approved by EPA;

1.     Any deadline imposed by the SOW or by any plan which is prepared pursuant to Section VI or the SOW and approved by EPA;

2.     Obligations imposed by Section XV (Emergency Response);

3.     Obligations imposed by Section IX (Access and Institutional Controls) in accordance with Paragraph 6.e. of this Consent Decree;

4.     Performance of the Remedial Action in accordance with the ROD, the SOW, and this Consent Decree;

38

5.      Modification of the SOW or related work plans pursuant to Paragraph 12, and implementation of the work called for by such modifications in accordance with the modified SOW or work plans;

6.      Implementation of O&M, including post-remediation monitoring, in accordance with the ROD and this Consent Decree;

7.      Implementation of the ICIAP pursuant to the ROD and this Consent Decree in accordance with Paragraph 6.e. of this Consent Decree; and

8.      Performance of studies and investigations pursuant to Section VII (Remedy Review).

75.      Stipulated Penalty Amounts –Tier 2.

a.      The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 75.b.:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th day |
| $ 3,000 | 15th through 30th day |
| $ 5,000 | 31st day and beyond |

b.      Compliance Milestones.

1.      Permitting split or duplicate samples, quality assurance, and other requirements pursuant to Section VIII (Quality Assurance, Sampling, and Data Analysis;

2.      Designation of Appendix A-1 Settling Defendants' Project Coordinator as required by Section XII (Project Coordinators);

3.      Obligations imposed by Section XIII (Performance Guarantee);

4.      Timely submission and, if necessary, revision and resubmission of the name, title and qualifications of the proposed Supervising Contractor pursuant to Section VI (Performance of Work by Appendix A-1 and Owner Settling Defendants);

5.      Certification of completion requirements set forth in Section XIV (Certification of Completion), including both the requirement to make the certification and the requirement that the certification be truthful;

6.      Timely notification regarding any delay or anticipated delay consistent with Paragraph 30;

7.      Indemnification and insurance requirements set forth in Section XVII (Indemnification and Insurance);

8.      Reporting requirements set forth in Section X (Reporting Requirements);

9.      Timely submission of written notification of any off-Site shipment of Waste material from the Site to an out-of-state waste management facility pursuant to Paragraph 14;

10.      Submission of documents and other information in accordance with Section XXIV (Access to information);

11.      Payments required by Section XVI (Payments for Response Costs);

12.      Any other requirement of this Consent Decree that applies to Settling Defendants and that is not identified in Paragraphs 74.b. and 75.b.

76.      As to Owner Settling Defendant, stipulated penalties shall accrue per violation per day as set forth in Paragraph 74.a. for obligations imposed by Section IX (Access and Institutional Controls) and for violations of Owner Settling Defendant's obligations pursuant to Appendix H hereto. Stipulated penalties shall accrue per violation per day as set forth in Paragraph 75.a. for any other requirement of this Consent Decree that applies to Owner Settling Defendant.

77.      In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 92 (Work Takeover), Appendix A-1 Settling Defendants shall be liable for a stipulated penalty in the amount of $1,000,000. Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 45 (Funding for Work Takeover) and 92 (Work Takeover).

78.      All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section XI (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Appendix A-1 Settling Defendants and/or Owner Settling Defendant, as the case may be, of any deficiency; (b) as to Appendix A-1 Settling Defendants, with respect to a decision by the ERRD Director of EPA Region 2, under Paragraph 70.c. or 71.a. of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Appendix A-1 Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) as to Appendix A-1 Settling Defendants, with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

79.      Following EPA's determination that Appendix A-1 Settling Defendants and/or Owner Settling Defendant, as the case may be, have failed to comply with a requirement of this Consent Decree, and/or an Appendix A-2 and/or Appendix B Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Appendix A-1 Settling Defendants, Owner Settling Defendant, and/or such Appendix A-2 and/or Appendix B Settling

Defendant, as the case may be, written notification of the same and describe the noncompliance. EPA may send such Settling Defendant(s) a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified such Settling Defendant(s) of a violation.

80.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after such receipt by Settling Defendant(s) from EPA of a demand for payment of the penalties, unless, in the case of Appendix A-1 Settling Defendants, such Appendix A-1 Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraphs 56.c. (Instructions for Future Response Cost Payments) and 56.d (Instructions for All Payments).

81.     As to Appendix A-1 Settling Defendants, penalties shall continue to accrue as provided in Paragraph 78 during any dispute resolution period, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 15 days after the agreement or the receipt of EPA's decision or order;

b.      If the dispute is appealed to this Court and the United States prevails in whole or in part, Appendix A-1 Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 81.c;

c.      If the District Court's decision is appealed by any Party, Appendix A-1 Settling Defendants shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Appendix A-1 Settling Defendants to the extent that they prevail.

82.     If Settling Defendant(s) fail to pay stipulated penalties when due, such Settling Defendant(s) shall pay Interest on the unpaid stipulated penalties. As to Appendix A-2 Settling Defendants, Owner Settling Defendant and Appendix B Settling Defendants, Interest shall accrue from the date of demand under Paragraph 80 until the date of payment. As to Appendix A-1 Settling Defendants, Interest shall accrue as follows: (a) if Appendix A-1 Settling Defendants have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 81 until the date of payment; and (b) if Appendix A-1Settling Defendant(s) fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 80 until the date of payment. If such Settling Defendant(s) fail to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

83.    The payment of penalties and Interest, if any, shall not alter in any way Appendix A-1 Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree or Owner Settling Defendant's obligation to perform that portion of the Work required of Owner Settling Defendant under this Consent Decree.

84.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of such Settling Defendants' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

85.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.    COVENANTS BY PLAINTIFF

86.    <u>Covenants for Settling Defendants by United States</u>.

a.    <u>Covenants for Appendix A-1 Settling Defendants</u>.  In consideration of the actions that will be performed and the payments that will be made by Appendix A-1 Settling Defendants under this Consent Decree, and except as specifically provided in Paragraphs 88, 89 (United States' Pre- and Post-Certification Reservations), and 91 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Appendix A-1 Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA relating to the Site. Except with respect to future liability, these covenants shall take effect upon the Effective Date. With respect to future liability, these covenants shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 47.b. of Section XIV (Certification of Completion). These covenants are conditioned upon the satisfactory performance by Appendix A-1 Settling Defendants of their obligations under this Consent Decree.  These covenants extend only to Appendix A-1 Settling Defendants and do not extend to any other person.

b.    <u>Covenants for Owner Settling Defendant</u>.  In consideration of the actions that will be performed by Owner Settling Defendant under this Consent Decree, and except as specifically provided in Paragraphs 88, 89 (United States' Pre- and Post-Certification Reservations), and 91 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Owner Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA relating to the Site. Except with respect to future liability, these covenants shall take effect upon the Effective Date. With respect to future liability, these covenants shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 47.b. of Section XIV (Certification of Completion).  These covenants are conditioned upon the satisfactory performance by Owner Settling Defendant of its obligations under this Consent Decree.  These covenants extend only to Owner Settling Defendant and do not extend to any other person.

c.    Covenants for Appendix A-2 Settling Defendants.  In consideration of the payments that will be made by Appendix A-2 Settling Defendants under this Consent Decree, and except as specifically provided in Paragraphs 88, 89 (United States' Pre- and Post-Certification Reservations), and 91 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Appendix A-2 Settling Defendants, pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  Except with respect to future liability, these covenants shall take effect on the date upon which the payment required under Paragraph 52.a. is deposited into the Escrow Account, as well as any Interest or stipulated penalties due thereon under Paragraph 58 (Interest) or Section XX (Stipulated Penalties). With respect to future liability, these covenants shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 47.b. of Section XIV (Certification of Completion). These covenants not to sue the Appendix A-2 Settling Defendants are conditioned upon the satisfactory performance by Appendix A-2 Settling Defendants of their obligations under this Consent Decree. These covenants extend only to Appendix A-2 Settling Defendants and do not extend to any other person.

d.    Covenant for Appendix B Settling Defendants.  In consideration of the payments that will be made by each Appendix B Settling Defendant under this Consent Decree, and except as specifically provided in Paragraph 91 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against each such Appendix B Settling Defendant, pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  This covenant shall take effect on the date upon which each such payment required under Paragraph 52.b. is deposited into the Escrow Account, as well as any Interest or stipulated penalties due thereon under Paragraph 58 (Interest) or Section XX (Stipulated Penalties).   These covenants not to sue each of the Appendix B Settling Defendants are conditioned upon the satisfactory performance by that Appendix B Settling Defendant of its obligations under this Consent Decree. These covenants extend only to Appendix B Settling Defendants and do not extend to any other person.

87.    Covenant for Settling Federal Agencies.  In consideration of the payments that will be made by the United States on behalf of Settling Federal Agencies under this Consent Decree, and except as specifically provided in Paragraphs 88, 89 (United States' Pre- and Post-Certification Reservations), and 91 (General Reservations of Rights), EPA covenants not to take administrative action against Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  Except with respect to future liability, EPA's covenant shall take effect upon the making of the payments required by Paragraph 54.a (Payments by Settling Federal Agencies) and any Interest due thereon under Paragraph 54.b.  With respect to future liability, EPA's covenant shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 47.b of Section XIV (Certification of Completion).  EPA's covenant is conditioned upon the satisfactory performance by Settling Federal Agencies of their obligations under this Consent Decree.  EPA's covenant extends only to Settling Federal Agencies and does not extend to any other person.

88.    United States' Pre-Certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Appendix A-1 Settling Defendants, Appendix A-2 Settling Defendants and Owner Settling Defendant, and EPA reserves the right to issue an

43

administrative order seeking to compel Settling Federal Agencies, to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) prior to Certification of Completion of the Remedial Action, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

89.     United States' Post-Certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Appendix A-1 Settling Defendants, Appendix A-2 Settling Defendants, and Owner Settling Defendants, and EPA reserves the right to issue an administrative order seeking to compel Settling Federal Agencies, to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) subsequent to Certification of Completion of the Remedial Action, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

90.     For purposes of Paragraph 88 (United States' Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the ROD for the Site and the administrative record supporting the ROD.  For purposes of Paragraph 89 (United States' Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

91.     General Reservations of Rights.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants, and this Consent Decree is without prejudice to, all rights against Settling Federal Agencies, with respect to all matters not expressly included within Plaintiff's covenants.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against the respective Settling Defendants, and this Consent Decree is without prejudice to, all rights against Settling Federal Agencies:

a.     with respect to Appendix A-1 Settling Defendants and Owner Settling Defendant, liability for failure by Appendix A-1 Settling Defendants and/or  Owner Settling Defendant to meet their respective obligations of this Consent Decree;

b.     with respect to each Appendix A-2 Settling Defendant and Appendix B Settling Defendant and Settling Federal Agencies, liability for failure by such Appendix A-2, Appendix B Settling Defendant and/or Settling Federal Agencies to meet a requirement of this Consent Decree that relates to such Appendix A-2 Settling Defendant, Appendix B Settling Defendant and/or Settling Federal Agencies.

c.      with respect to Settling Defendants and Settling Federal Agencies, liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

d.      with respect to Settling Defendants and Settling Federal Agencies, liability based on the ownership or operation of the Site by Settling Defendants when such ownership or operation commences after signature of this Consent Decree by Settling Defendants;

e.      with respect to Settling Defendants and Settling Federal Agencies, liability based on Settling Defendants' and/or Settling Federal Agencies' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendants or by DOJ on behalf of Settling Federal Agencies;

f.      with respect to Settling Defendants and Settling Federal Agencies, liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.      with respect to Settling Defendants, criminal liability;

h.      with respect to Appendix A-1 Settling Defendants and Owner Settling Defendant, liability for violations of federal or state law by Appendix A-1 Settling Defendants and/or Owner Settling Defendant that occur during or after implementation of the Work;

i.      with respect to Appendix A Settling Defendants, Owner Settling Defendant, and Settling Federal Agencies, prior to Certification of Completion of the Remedial Action, liability for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 12.a. (Modification of SOW or Related Work Plans);

j.      with respect to Appendix A Settling Defendants and Settling Federal Agencies, liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry regarding the Site; and

k.      with respect to Appendix A Settling Defendants, liability for performance of the work pursuant to the RD SAO and the RD UAO, but not liability for EPA's Future Response Costs as that term is defined in Paragraph 9.e. of the RD SAO.

92.      <u>Work Takeover</u>.

a.      In the event EPA determines that Appendix A-1 Settling Defendants have (1) ceased implementation of any portion of the Work, or (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Appendix A-1 Settling Defendants.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Appendix A-1 Settling Defendants a period of ten days within which to remedy the circumstances giving rise to EPA's issuance of such notice.  Funding of Work Takeover costs is addressed under Paragraph 45.

b.      If, after expiration of the ten-day notice period specified in Paragraph 92.a, Appendix A-1 Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA will notify Appendix A-1 Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 92.b.

c.      Appendix A-1 Settling Defendants may invoke the procedures set forth in Paragraph 70 (Record Review) to dispute EPA's implementation of a Work Takeover under Paragraph 92.b. However, notwithstanding Appendix A-1 Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 92.b until the earlier of (1) the date that Appendix A-1 Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 70 (Record Review) requiring EPA to terminate such Work Takeover.

93.      Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.


XXII.   COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES

94.      <u>Covenants Not to Sue by Settling Defendants</u>.  Subject to the reservations in Paragraph 97, Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Site, and this Consent Decree, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, or any other provision of law;

b.      any claims against the United States, including any department, agency, or instrumentality of the United States, under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Site;

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C.§ 2412, as amended, or at common law.

95.      <u>Covenant by Settling Federal Agencies</u>.  Settling Federal Agencies agree not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C.§ 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, or 113, or any other provision of law with respect to the Site and this Consent Decree.  This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300).

96.     Except as provided in Paragraph 99 (Claims Against *De Minimis* and Ability to Pay Parties) and Paragraph 104 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XXII (Covenants by Plaintiff), other than in Paragraphs 91.a. and b. (claims for failure to meet a requirement of the Consent Decree), 91.g. (criminal liability), 91.h (violations of federal/state law during or after implementation of the Work),  and 91.k. (liability for performance of the work under the RD SAO and RD UAO), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

97.     Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA  and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Appendix A-1 Settling Defendants' plans, reports, other deliverables or activities.  Settling Defendants also reserve, and this Consent Decree is without prejudice to, contribution claims against Settling Federal Agencies in the event any claim is asserted by the United States against Settling Defendants pursuant to any of the reservations in Section XXII (Covenants by Plaintiff) other than in Paragraphs 91.a and b. (claims for failure to meet a requirement of the Decree), 91.g (criminal liability), and 91.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.  Settling Defendants reserve all claims for failure by the Settling Federal Agencies to meet a requirement of this Consent Decree.

98.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C.§ 9611, or 40 C.F.R.§ 300.700(d).

99.     <u>Claims Against *De Minimis* and Ability-to-Pay Parties</u>.  Settling Defendants agree not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site against any person that has entered or in the future enters into a final CERCLA Section 122(g) *de minimis* settlement, or a final settlement based on limited ability to pay, with EPA with respect to the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XXIII.   EFFECT OF SETTLEMENT; CONTRIBUTION

100.   Except as provided in Paragraph 99 (Claims Against *De Minimis* and Ability-to-Pay Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Paragraph 99 (Claims Against *De Minimis* and Ability-to-Pay Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

101.   The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant and each Settling Federal Agency is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person, except for the State; provided, however, that if the United States exercises rights against Settling Defendants (or if EPA or the federal natural resource trustee assert rights against Settling Federal Agencies) under the reservations in Section XXII (Covenants by Plaintiffs), other than in Paragraphs 91.a and b. (claims for failure to meet a requirement of the Consent Decree), 91.g (criminal liability), or 91.h (violations of federal/state law during or after implementation of the Work), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

102.   Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

103.   Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States within ten days after service of the complaint on such Settling Defendant.  In addition, each Settling Defendant shall notify the United States within ten days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial.

104.   <u>Res Judicata and Other Defenses</u>.  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants and Settling Federal Agencies shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph

affects the enforceability of the covenants not to sue set forth in Section XXII (Covenants by
Plaintiff).

## XXIV.   ACCESS TO INFORMATION

105.   Appendix A-1 Settling Defendants and Owner Settling Defendant shall provide to
EPA, upon request, copies of all records, reports, documents, and other information (including
records, reports, documents, and other information in electronic form) (hereinafter referred to as
"Records") within their possession or control or that of their contractors or agents relating to
activities at the Site or to the implementation of this Consent Decree, including, but not limited
to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports,
sample traffic routing, correspondence, or other documents or information regarding the Work.
Appendix A-1 Settling Defendants and Owner Settling Defendant shall also make available to
EPA, for purposes of investigation, information gathering, or testimony, their employees, agents,
or representatives with knowledge of relevant facts concerning the performance of the Work.

106.   Business Confidential and Privileged Documents.

a.   Appendix A-1 Settling Defendants and Owner Settling Defendant may
assert business confidentiality claims covering part or all of the Records submitted to Plaintiff
under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of
CERCLA, 42 U.S.C.§ 9604(e)(7), and 40 C.F.R.§ 2.203(b).  Records determined to be
confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no
claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has
notified Appendix A-1 Settling Defendants and/or Owner Settling Defendant that the Records are
not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart
B, the public may be given access to such Records without further notice to Appendix A-1
Settling Defendants and Owner Settling Defendant.

b.   Appendix A-1 Settling Defendants and Owner Settling Defendant may
assert that certain Records are privileged under the attorney-client privilege or any other privilege
recognized by federal law.  If Appendix A-1 Settling Defendants and/or Owner Settling
Defendant assert such a privilege in lieu of providing Records, they shall provide Plaintiff with
the following:  (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation
(e.g., company or firm), and address of the author of the Record; (4) the name and title of each
addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege
asserted by Appendix A-1 Settling Defendants and/or Owner Settling Defendant.  If a claim of
privilege applies only to a portion of a Record, the Record shall be provided to the United States
in redacted form to mask the privileged portion only.  Appendix A-1 Settling Defendants and
Owner Settling Defendant shall retain all Records that they claim to be privileged until the United
States has had a reasonable opportunity to dispute the privilege claim and any such dispute has
been resolved in the Appendix A-1 Settling Defendants'  and/or Owner Settling Defendant's
favor.

c.   No records created or generated pursuant to the requirements of this
Consent Decree shall be withheld from the United States on the grounds that they are privileged
or confidential.

107.   No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV.   RETENTION OF RECORDS

108.   Until ten years after Settling Defendants' receipt of EPA's notification pursuant to Paragraph 48.b (Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site.  Each Appendix A-1 Settling Defendant and Owner Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Appendix A-1 Settling Defendant and Owner Settling Defendant (and their contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

109.   The United States acknowledges that each Settling Federal Agency (a) is subject to all applicable Federal record retention laws, regulations, and policies; and (b) hereby certifies that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

110.   At the conclusion of this record retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, Settling Defendants shall deliver any such Records to EPA.  Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege, they shall provide Plaintiffs with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only.  Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.  However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

111.   Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise

disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C.§§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C.§ 6927.

## XXVI.   NOTICES AND SUBMISSIONS

112.   Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, Settling Federal Agencies, and Settling Defendants, respectively.  Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

| | |
|---|---|
| **As to the United States**:<br>One (1) copy of all written communications other than work plans, design documents and technical reports | Chief, Environmental Enforcement Section<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-11-2-07742/7 |
| and: | Chief, Environmental Defense Section<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 23986<br>Washington, D.C.  20026-3986<br>Re: DJ # 90-11-2-0742/7 |
| **As to EPA:**<br><br>Four (4) paper copies and one electronic copy (on CD-ROM or DVD) of all work plans, design documents, and reports and one (1) paper copy of all other written communications | Chief,  Western New York Remediation Section<br>New York Remediation Branch<br>Emergency and Remedial Response Division<br>U.S. Environmental Protection Agency, Region 2<br>290 Broadway, 20th Floor<br>New York, NY  10007-1866<br><br>Attention: Mercury Refining Superfund Site Remedial<br>Project Manager |

51

| | |
|---|---|
| and:<br><br>One (1) copy of all written communications other than work plans, design documents and technical reports | Chief, New York Caribbean Superfund Branch<br>Office of Regional Counsel<br>U.S. Environmental Protection Agency, Region 2<br>290 Broadway, 17th Floor<br>New York, NY  10007-1866<br><br>Attention:  Mercury Refining Superfund Site Attorney |
| **As to the State:** | Brian Davidson<br>NYSDEC - BWRA 11th Floor<br>625 Broadway<br>Albany, NY 12233-7017 |
| **As to Appendix A-1 Settling Defendants:** | Appendix A-1 Settling Defendants' Project Coordinator:<br>Jeffrey Caputi, PE, CHMM, QEP, LSP, LEP<br>Vice President<br>Brown and Caldwell<br>110 Commerce Drive<br>Allendale, NJ  07401 |
| **As to Appendix A-2 Settling Defendants** | Chris Sutton<br>Perkins, Coie<br>1900 Sixteenth Street, Suite 1400<br>Denver, CO  80202 |
| **As to Appendix B Settling Defendants** | See Attached Appendix B |
| **As to Owner Settling Defendant** | Kevin M. Young, Esq.<br>Young/Sommer LLC<br>Executive Woods<br>5 Palisades Drive<br>Albany, NY 12205 |

## XXVII.  RETENTION OF JURISDICTION

113.   This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the

construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVIII. APPENDICES

114.   The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the List of Appendix A Settling Defendants;

"Appendix A-1" is the List of Appendix A-1 Settling Defendants;

"Appendix A-2" is the List of Appendix A-2 Settling Defendants;

"Appendix B" is a List of Appendix B Settling Defendants with Payment Amounts and a List of Appendix B Settling Defendants' Contacts;

"Appendix C" is the Draft Escrow Agreement;

"Appendix D" is the ROD;

"Appendix E" is the list of Settling Federal Agencies;

"Appendix F" is a Map of the Site;

"Appendix G" is the SOW;

"Appendix H" is the Agreement Between Appendix A-1 Settling Defendants and Owner Settling Defendant;

"Appendix I" is the Draft Proprietary Control; and

"Appendix J" is the Draft Performance Guarantee.

## XXIX.   COMMUNITY RELATIONS

115.   If requested by EPA, Appendix A-1 Settling Defendants shall participate in community relations activities pursuant to the community relations plan to be developed by EPA. EPA will determine the appropriate role for Appendix A-1 Settling Defendants under the Plan. Appendix A-1 Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Appendix A-1 Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings that may be held or sponsored by EPA to explain activities at or relating to the Site. Costs incurred by the United States under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C.§ 9617(e), shall be considered Future Response Costs that Appendix A-1 Settling Defendants shall pay pursuant to Section XVI (Payments for Response Costs).

## XXX.   MODIFICATION

116.   Except as provided in Paragraph 12.a. (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Appendix A-1 Settling Defendants, and shall be effective upon approval by the Court.  Except as provided in Paragraph 12.a., non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Appendix A-1 Settling Defendants.  A

modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii). Before providing its approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

117.   Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXXI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

118.   This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C.§ 9622(d)(2), and 28 C.F.R.§ 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

119.   If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXII.   SIGNATORIES/SERVICE

120.   Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

121.   Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

122.   Each Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXIII. FINAL JUDGMENT

123.   This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

124.   Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Defendants. The

Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS <u>17</u> DAY OF <u>Sept.</u>, 20<u>12</u>

_____

United States District Judge

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

**FOR THE UNITED STATES OF AMERICA:**

8/3/12
Date

Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

8/3/12
Date

Laura J. Rowley
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

8/3/12
Date

Eileen McDonough
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986

56

6/5/12
Date

Walter Mugdan
Director, Emergency and Remedial Response
Division
U.S. Environmental Protection Agency, Region 2
290 Broadway – 19th Floor
New York, NY 10007- 1866

6/4/12
Date

Sharon E. Kivowitz
Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway -- 17th floor
New York, NY 10007-1866

57

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR The Gillette Company
Name of Company

Date

Name (print): Roberto Mendez
Title: Director, Global Finance & Accounting, Duracell
Address: 14 Research Drive, Bethel, CT 06801

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR KeySpan Gas East Corp d/b/a National GRID
Name of Company

4/13/12
Date

Name (print): Robert D. Teetz
Title: VP - ENVIRONMENTAL
Address: 175 E. Old Country Road, Hicksville NY 11801

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Francis J. Murphy
Title: SENIOR COUNSEL
Address: NATIONAL GRID, 175 E. Old Country Road
Phone: 516-545-3745
email: FRANCIS. MURPHY ～
Hicksville NY 11801
US. NGRD.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR   Energizer Battery Manufacturing, Inc.
        Name of Company

_____
Date

Name (print):  Mark LaVigne
Title:         General Counsel
Address:       Law Department
               533 Maryville University Drive
               St. Louis, MO  63141

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): David P. Rosenblatt
Title:        Attorney for Energizer Battery Manufacturing,
Address:      Burns & Levinson                        Inc.
Phone:        125 Summer Street
email:        Boston, MA  02110
              (617) 345-3330
              drosenblatt@burnslev.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR *UNION CARBIDE CORPORATION*
        Name of Company

*APRIL 11, 2012*
Date

Name (print): THOMAS E. GIECK
Title: AUTHORIZED REPRESENTATIVE
Address: 2754 COMPASS DR., SUITE 280
              GRAND JUNCTION, CO 81506

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): C T CORPORATION SYSTEM
Title:
Address: 1633 BROADWAY, NEW YORK, NY
Phone:                                    10019
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR  Spectrum Brands, Inc. (On Behalf of
_____ Rayovac)
Name of Company

April 9, 2012
Date

Name (print): Tracy S. Wrycha
Title:  Vice President
Address: 601 Rayovac Drive
        Madison, WI  53711

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Andrew Perellis
Title: Attorney, Seyfarth Shaw LLP
Address: 131 S. Dearborn, Chicago, IL 60603
Phone:  312.460.7813
email:  aperellis@seyfarth.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR Brambles Environmental, Inc.
        Name of Company

April 10, 2012
Date

Name (print): Andrew Clawson
Title: Vice President, Secretary and Treasurer
Address: 180 Technology Parkway
Norcross, GA 30092

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): WILLIAM L. PENCE
Title: ATTORNEY FOR BRAMBLES ENVIRONMENTAL
Address: BAKER & HOSTETLER LLP
2300 SUNTRUST CENTER
200 SOUTH ORANGE AVENUE
ORLANDO, FL 32801-3432
Phone: (407) 649-4095
email: wpence@bakerlaw.com

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Clean Harbors Environmental Services, Inc._
Name of Company

_April 18, 2012_
Date

Name (print): Michael R. McDonald
Title: Assistant General Counsel + Assistant Secretary
Address: 42 Longwater Drive, Norwell, MA 02061

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Michael R. McDonald
Title: Assistant General Counsel + Assistant Secretary
Address: 42 Longwater Dr., Norwell, MA 02061
Phone: (781) 792 - 5136
email: mcdonaldm @ cleanharbors.com

58

Signature Page for Consent Decree the Mercury Refining Superfund Site

FOR   Qwest Communications International, Inc.

Date

Name:     R. Stewart Ewing
Title:      Executive Vice President/CFO
Address:  100 CenturyLink Drive
            Monroe, LA  71203

Agent Authorized to Accept Service
On Behalf of Above-signed Party:

Name:     Chris Sutton
Title:      Counsel
Address:  Perkins Coie LLP
            1900 Sixteenth Street, Suite 1400
            Denver, CO 80202-5255
Phone:    303.291.2312
email:     csutton@perkinscoie.com

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR   Verizon New York Inc.
      Name of Company

April 17, 2012
Date

Name (print):  David J. Freeman
Title:         Attorney-in-Fact
Address:       75 East 55th Street
               New York, NY 10022

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):   David J. Freeman
Title:     Attorney-in-Fact
Address:   75 East 55th St., New York, NY 10022
Phone:     212-318-6555
email:   davidfreeman@paulhastings.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR 26 Railroad Avenue, Inc
Name of Company

4/16/2012
Date

Name (print): Leo Cohen
Title: Officer
Address: 26 Railroad Avenue
Albany, NY 12205

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title: Young Sommer
Address: 5 Palisades Drive
Phone:
email:

Albany, NY 12205

518 438 9907

kyoung@youngsommer.com
Attn: Kevin M. Young.

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _A. P. Pharma, Inc._
Name of Company

4/6/12
Date

Name (print): _John Whelan_
Title: CEO
Address: _123 Saginaw Drive, Redwood City, CA 94063_

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Ryan A. Murr
Title: Partner
Address: Three Embarcadero Center, San Francisco, CA
Phone: 415-315-6395
email: ryan.murr@ropesgray.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _AJINOMOTO  NORTH AMERICA, Inc._

Name of Company

_Takayuki  Koda_

Date

Name (print):   Takayuki  KODA
Title:   Senior Vice President
Address:   400 Kelby Street, Fort Lee, NJ 07024

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR Allegheny Ludlum Corporation,
     Name of Company now Known as
Allegheny Ludlum, LLC

4/18/12
Date

Name (print): Elliot S. Davis
Title: Senior Vice President
Address: 1000 Six PPG Place
         Pittsburgh, PA 15222

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Lauren S. McAndrews
Title: Vice President - Labor Relations & Asst.
Address: 1000 Six      General Counsel
Phone:        PPG Place
email:   Pittsburgh, PA 15222
         412-394-2974
         Lauren.mcandrews@ATIMetals.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _An R e S co, L L C_
Name of Company

4/10/12
Date

Name (print):  V.P.
Title:
Address:

Michael J. Mascali, RPH, FASCP, ASQ CMQ - OE
V.P. Regulatory Affairs
AMRESCO, LLC
6681 Cochran Road
Solon, Ohio 44139 USA
Tel: 440-914-3331  Fax: 440-349-0235

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR Arizona Chemical Company, LLC
Name of Company

*Pamela J. Simmons*

Name (print): Pamela J. Simmons
Title: Corporate Counsel and Assistant Secretary
Address: 4600 Touchton Road East
Suite 1200
Jacksonville, FL 32246

April 18, 2012
Date

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Pamela J. Simmons
Title: Corporate Counsel and Assistant Secretary
Address: 4600 Touchton Road East, Suite 1200
Phone: Jacksonville, FL 32246
email: (904) 928-8700

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Atmos Energy Corporation_
Name of Company

4-19-12
Date

Name (print): Douglas C Walther
Title: Deputy General Counsel
Address: P.O. Box 650205
          Dallas, Texas 75265-0205

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Corporation Service Company
Title:
Address: 211 East 7th Street, Suite 620
Phone: Austin, TX 78701
email: 512.481.1092

www.cscglobal.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR BATTERY BROKER ENVIRONMENTAL
    Name of Company         SERVICES INK.

MAY 2, 2012
Date

LEANNE REID
Name (print):
Title: ADMINISTRATOR
Address: 11 TUPPER AVE
            ETOBICOKE ON M8Z 5H5

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): LEANNE REID
Title: ADMINISTRATOR
Address: 11 TUPPER AVENUE, ETOBICOKE
Phone: 416-255-3321
email: administration@
            batterybroker.on.ca.

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Buffalo Optical Co._
Name of Company

4/20/12
Date

Name (print): _Joseph N. Gugliuzza_
Title: _president_
Address: _280 Delaware Ave_
         _Buffalo, N.Y. 14202_

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): _Joseph N. Gugliuzza_
Title: _President._
Address: _280 Delaware Ave._
Phone: _716-859-1621_
email: _PegNP@yahoo.com_

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Cameron International Corporation_
       Name of Company  FKA Cooper Cameron

_____
Date

_____
Name (print):
Title: _Associate General Counsel_
Address: _16250 Port Northwest_
         _Houston TX   77041_

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): _Bruce Himmelrein_
Title:
Address:   _Same as above_
Phone:       ''
email:       ''
          ''

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR CHEMTRON CORPORATION
Name of Company

17 APRIL 2012
Date

Name (print): RICHARD M. TIMM, JR.
Title: GENERAL COUNSEL
Address: 35850 SCHNEIDER CT.
AVON OH 44011

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): RICHARD M. TIMM, JR.
Title: GENERAL COUNSEL
Address: 35850 SCHNEIDER CT., AVON, OH 44011
Phone: 440-937-6348
email: RTIMM@CHEMTRON-CORP.COM

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR   City of Lakeland

Name of Company

4-24-12

Date

Name (print):  Timothy J. McCausland

Title:  City Attorney

Address:  228 S Massachusetts Avenue, Lakeland, FL 33801

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):  Timothy J. McCausland

Title:  City Attorney

Address:  228 S Massachusetts Avenue, Lakeland, FL 33801

Phone: 863.834.6010

email:  timothy.mccausland@lakelandgov.net

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR City of North Tonawanda, New York
                 Name of Company

4/25/12

Date

Name (print): Robert G. Ortt
Title:        Mayor
Address:      City Hall, 216 Payne Avenue
              North Tonawanda, NY   14120

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Shawn P. Nickerson
Title:        City Attorney
Address:      City Hall, 216 Payne Avenue
Phone:        North Tonawanda, NY   14120
email:        (716) 695-8590
              nick538@verizon.net

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR   City of Richmond, Virginia
Name of Company

April 19, 2012
Date

Name (print): Robert C. Steidel
Title:  Director, Department of Public Utilities, City of Richmond
Address: 730 East Broad Street, Richmond, Virginia  23219

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):  Allen L. Jackson
Title:  City Attorney
Address: City Hall, 900 E. Broad Street, Richmond, Virginia  23219
Phone: (804) 646-7969
email: Allen L. Jackson@Richmondgov.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _DUKANE CORPORATION_

Name of Company

4-5-2012

Date

Name (print): MICHAEL RITSCHDORFF
Title: PRESIDENT
Address: 2900 DUKANE DR.   ST. CHARLES, IL.
60174

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _____FirstEnergy Corp._____
Name of Company

April 17, 2012
Date

Name (print): Douglas J. Weber
Title:        Senior Corporate Counsel
Address:      76 S. Main St., Akron, OH  44308

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Douglas J. Weber
Title:        Senior Corporate Counsel
Address:      76 S. Main St., Akron, OH  44308
Phone:        (330) 761-4205
email:        djweber@firstenergycorp.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Glit, Division of CCP LLC_
         Name of Company

_April 16, 2012_
Date

Name (print): _Brian Nichols_
Title: _Director / Asst. Sec_
Address: _305 Rock Indl. Park Drive_
              _Bridgeton MO 63044_

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): _Anne Viner_
Title: _Attorney @ Much Shelist PC_
Address: _191 N Wacker Drive Suite 1800_
                                       _Chicago IL 60606_
Phone: _312 521 2713_
email: _Aviner@muchshelist.com_

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _HARDING METALS, INC._
Name of Company

4-13-2012
Date

JOSEPH J. HARDING   Joseph J. Harding
Name (print):
Title: VP
Address:   42 HARDING DRIVE
           PO BOX 418
           NORTHWOOD, NH  03261

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):   Jillian E. Colby
Title:   Attorney - Katil I. LaCount
Address:   681 Wallis Road, Rye, NH 03870
Phone:   603-964-1414
email:   Ryelaw @ comcast.net

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Honeywell International Inc._
Name of Company

April 17, 2012
Date

Richard W. Galloway
Name (print): Richard W. Galloway
Title: Remediation Manager
Address: 101 Columbia Road
Morristown, NJ 07962

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Johnson Controls, Inc_
Name of Company

4-5-2012
Date

Name (print): Jeff Werwie
Title: Director of Environmental Affairs
Address: 507 E. Michigan St.
Milwaukee, WI 53202

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Ben Grawe
Title: Attorney
Address: Gonzalez, Saggio & Harlan
Phone: 8383 Greenway Blvd; Suite 600
email: Middleton, WI 53562

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR Los Angeles Unified School District
Name of Company

Name (print): Michelle Meghrouni
Title: Chief Facilities Counsel
Address: 333 S. Beaudry Avenue
Los Angeles, CA 90017

4/9/12
Date

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Jefferson Crain
Title: Board Secretariat
Address: 333 S. Beaudry Ave., 24th Fl.
Phone: (213) 241-7002
email: jefferson.crain@lausd.net

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _M.D.I., Inc,_
         Name of Company

_4-17-12_
Date

_Mike Brewers / Mike Brewers_
Name (print):
Title: _V.P. Operations_
Address: ~~267~~ _25028 U.S. 12 E,_
_Edwardsburg, MI 49112_

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR Memphis Light, Gas and Water Division
Name of Company

4/17/12
Date

Name (print): Jerry R. Collins, Jr.
Title: President & CEO
Address: 220 South Main Street
Memphis, TN 38103

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Charlotte Knight Griffin
Title: Manager of Legal Services
Address: 220 South Main Street, Memphis, TN
Phone: (901) 528-4721
email: cgriffin@mlgw.org

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Metalor Technologies_ U.SA Corp
Name of Company

10 April 2012
Date

Name (print): Antoine De Montmollin
Title: Chief Financial Officer Americas
Address: 255 John Dietsch Boulevard
         North Attleboro, MA 02761

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Diane George
Title: EH&S Officer
Address: 255 John Dietsch Blvd, N. Attleboro, MA
Phone: 508.699.8800 x 224              02761
email: Diane.George@Metalor.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Orange Water and Sewer Authority_
Name of Company

Date

Name (print): Ed Kerwin
Title: Executive Director
Address: 400 Jones Ferry Road
Carrboro, NC 27510

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

April 9, 2012
Date

FOR _Orlando Utilities Commi_
Name of Company

Name (print): Chip Merriam
Title: Chief Legislative + Regulatory Compliance Officer
Address: 100 W Anderson St
Orlando, FL 32802

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Wayne Morris
Title: Chief Deputy General Counsel
Address: P. O. Box 3193 Orl., FL 32802
Phone: (407) 434-2160
email: wmorris@ouc.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR ___ OSRAM SYLVANIA Inc.
Name of Company

_April 12, 2012_
Date

Name (print): Pamela Tracey
Title: VP & General Counsel
Address: 100 Endicott Street
Danvers, MA 01923

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): CT Corporation System
Title:  Registered Agent
Address:  111 Eighth Avenue, 13th Floor,
New York, NY  10011
Phone: 212-590-9070
Email: N/A

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR PARTLOW WEST CORPORATION n/k/a UTICA
HOLDING CO.
Name of Company

4/16/12
Date

Carl S. Grabinski
Name (print): CARL S. GRABINSKI
Title: VP
Address: C/O VIDEOJET TECHNOLOGIES
1500 MITTEL BLVD, WOOD DALE, ILL. 60191

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:  same as above
Address:
Phone: (636) 694 2790
email: carl.grabinski@danaher.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _Pioneer Natural Resources USA Inc._
Name of Company

4-16-12
Date

Name (print): Jefferson Rees
Title: VP Domestic Law
Address: Irving, TX
75039

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR Potomac Electric Power Company
Name of Company

April 17, 2012
Date

Name (print): Susan H. Power
Title: Deputy General Counsel
Address: 701 Ninth Street, N.W.
Washington, D.C. 20068

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Joanne Scanlon Prestia
Title: Special Counsel
Address: P.O. Box 6066, Newark, Delaware 19714-6066
Phone: (302) 429-3144
email: joanne.prestia@pepcoholdings.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _EAST SIDE JERSEY DAIRY INC_
    Name of Company

4/13/12
Date

Name (print): THOMAS R. WEBER
Title: ASST. SECRETARY
Address: 1100 BROADWAY
         CARLINVILLE, IL 62626

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): THOMAS R. WEBER
Title: ASST. SECRETARY
Address: 1100 BROADWAY, CARLINVILLE, IL 62626
Phone: (217) 854-2547
email:
       tweber @ prairiefarmsdairy.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR Rutland Regional Medical Center
Name of Company

4-10-12
Date

Name (print): Thomas W. Huebner
Title: President
Address: 160 Allen Street
         Rutland, VT   05701

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Thomas M. Dowling
Title: Attorney, Ryan Smith & Carbine, Ltd.
Address: 98 Merchants Row / PO Box 310, Rutland, VT 05701
Phone: 802-786-1025
email: tmd@rsclaw.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR:   SCANA CORPORATION

4/16/12

DATE

X  Paul V. Fant

Name:    Paul V. Fant
Title:     Sr. Vice President
Address: 220 Operation Way
              Cayce, SC  29033

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Corporation Service Company
Registered Agent
1703 Laurel Street
Columbia, South Carolina  29201

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR  Southern Union Company
                    Name of Company

4/23/12

Date

Name (print): Louis P. Soldano
Title:        Counsel
Address:      5051 Westheimer Road
              Houston, TX  77056

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Louis P. Soldano
Title:        Counsel
Address:      5051 Westheimer Road
Phone:        Houston, TX  77056
              713-989-2564
email:        louis.soldano@sug.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR ___SPACE SYSTEMS/LORAL___
Name of Company

___4/13/12___
Date

Name (print): ___RON HALEY___
Title: SR. VICE PRESIDENT & CFO
Address: 3825 FABIAN WAY
PALO ALTO, CA 94303

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR ~TAYLOR SCHOOL DISTRICT (TAYLOR CAREER CENTER)~
Name of Company

04/16/2012
Date

Name (print): BETHANY IVERSON
Title: SUPERINTENDENT
Address: 23033 NORTHLINE RD.
TAYLOR, MI 48180

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): (SAME
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _THE M&P LAB, INC._
Name of Company

4/13/2012
Date

Name (print): FRANK E. ANDERSON
Title: PRESIDENT
Address: 2210 TECHNOLOGY DRIVE
SCHENECTADY, NY 12308

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _The Scripps Research Institute_
Name of Company

_4-19-12_
Date

Name (print): _Thomas E. Northrup_
Title:
Address:

      Thomas E. Northrup, Ph.D., J.D.
      Chief Business Counsel
      The Scripps Research Institute

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):
Title:
Address:  10550 N. Torrey Pines Road, TPC-8
     La Jolla, CA 92037
Phone:
email:   Thomas E. Northrup, Ph.D., J.D.
     Chief Business Counsel
     The Scripps Research Institute
     858-784-2937
     northrup@scripps.edu

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR ___TRW  Automotive U.S. LLC___
Name of Company

April 11, 2012
Date

Name (print):  Mariann McNally
Title:   Assistant Secretary
Address:  12001 Tech Center Drive
          Livonia, MI 48150

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print):   Scott D. Blackhurst
Title:   Senior Counsel - Environment
Address: 12001 Tech Center Drive, Livonia, MI 48150
Phone:   734-855-3195
email:    scott.blackhurst@trw.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _UNION  COLLEGE_
Name of Company

Name (print): DIANE  BLAKE
Title: VP- Administration + Finance
Address: Feigenbaum Hall
Schenectady  NY  12308

_4/16/12_
Date

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): JOHN  SKUMURSKI
Title: Director of Budget, Insurance + EHS
Address: Feigenbaum Hall  Union College  Schdy NY 12308
Phone: 518 388 6104
email: Skumursj e union. edu

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR *University Hospital of Cleveland*
Name of Company

4/18/2012
Date

*Marian Homer*

Name (print): MARIAN HOMER
Title: Sr. Litigation Analyst
Address: 3605 Warrensville Center Rd. MSC 9115
Shaker Hts. OH 44122-5203

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): See above
Title:
Address:
Phone:
email:

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR Virginia Natural Gas
Name of Company

4 - 11 - 12

Date

Name (print): Paul R. Shlanta
Title: Executive Vice President and General Counsel
Address: AGL Resources, Inc.
10 Peachtree Place
Atlanta, GA 30309

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Edward A. Kazmarek
Title:        Kazmarek Geiger & Laseter LLP
Address:      3490 Piedmont Road NE, Suite 350
Phone:        Atlanta, GA 30305
email:        404-812-0840
              skazmarek@kglattorneys.com

58

Signature Page for Consent Decree regarding the Mercury Refining Superfund Site

FOR _York International Corp._
     Name of Company

4-5-2012
Date

Name (print): Jeff Werwie
Title: Director of Environmental Affairs
Address: 507 E. Michigan St.
         Milwaukee, WI 53202

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): Ben Grawe
Title: Attorney
Address:
Phone:
email:
         Gonzalez, Saggio + Harlan
         8383 Greenway Blvd, Suite 600
         Middleton, WI 53562